# Richmond.

Aspegren & Company v. Wallerstein Produce Company.

January 12, 1911.

Absent, Cardwell, J.

1. Sales F. O. B.—*Delaying Shipment by Seller—Obligation to Pay Sight Draft.*—If goods are sold "F. O. B. sight draft against documents," it is the duty of the seller to deliver the goods to the carrier f. o. b., ready to go forward at once, and this is a condition precedent to his right to demand payment of the draft, and if secret instructions are given to the carrier by the seller to hold the goods for any length of time, it is a violation of the contract, and the buyer is under no obligation to pay the draft.

Error to a judgment of the Law and Equity Court of the city of Richmond in a proceeding by motion for a judgment. Judgment for the defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*Jo. Lane & Cary Ellis Stern* and *A. W. Patterson*, for the plaintiffs in error.

*James Lewis Anderson*, for the defendant in error.

Whittle, J., delivered the opinion of the court.

On August 31, 1907, the plaintiffs in error, Aspegren & Company, of New York city, (hereinafter called the plaintiffs), who are dealers in evaporated fruits, through their

brokers, entered into a written contract with the defendant in error, Wallerstein Produce Company, of Richmond, Va., (hereinafter called the defendant), as follows: "Sold for a/c of Messrs. Aspegren & Co. of New York city, to Wallerstein Produce Co., Richmond, Va., five (5) cars (about 30,000 lbs. each), each car to be considered as a separate contract. Prime evaporated apples, crop 1907, packed in bags, bags to be furnished by buyers at 8 1/2 cents per lb. f. o. b. New York State, to be delivered during the month of December, 1907. Goods to be inspected and approved of at shipping point. Terms sight draft against documents. Any dispute arising under this contract to be settled by arbitration in New York city."

In the latter part of December, 1907, the defendant having sold a carload of the fruit in St. Louis, Mo., directed its shipment to its order to that city. Thereupon, the plaintiffs, on December 26, 1907, took a bill of lading for a carload of apples, and attached the same to a sight draft on the defendant. On the day following they notified the defendant by letter that they had drawn their sight draft on it for $2,583.06, for 309 bags of apples shipped to St. Louis as per instructions. This draft arrived in Richmond on Saturday, December 28th, and (Saturday being a half holiday), according to the banking custom in Richmond, it would ordinarily have been carried over until the succeeding Monday. The draft was not paid on Saturday, and by secret instructions from the plaintiffs was immediately returned to them.

The defendant was a large customer of the plaintiffs, their transactions amounting to $40,000 or $50,000 within the last month or two, and according to their previous course of dealing a reasonable time had been invariably allowed the defendant within which to meet such drafts. It moreover developed that the plaintiffs had not shipped the apples to St. Louis, as directed, and as they wrote the defendant they had done. Nor did they deliver the fruit "f. o. b." (that is to say,

"free on board" and ready to go forward at once), according to the contract. On the contrary, the apples were never shipped at all, but were merely placed with the railroad company, with private instructions to hold the car until the plaintiffs could hear from the draft. In other words, the plaintiffs never parted with and the defendant never obtained dominion of the goods.

On December 30th, the day after the draft had been returned, the plaintiffs, without notice, re-sold the apples, and, after the sale had been made, on the same day wrote the defendant that they would dispose of the fruit at best advantage and hold it responsible for whatever loss there might be.

Upon the foregoing facts this action was brought by the plaintiffs to recover the difference between the contract price and the amount realized at the re-sale of the fruit. There was a verdict for the defendant, upon which the trial court entered the judgment under review.

The plaintiffs' theory of the case is embodied in the following instruction, which the court refused: "The jury are instructed that the contract between the parties is in writing and defines their rights in the premises. If you believe from the evidence that the goods in question were loaded in a car for shipment to defendant and the bill of lading issued against same and presented with draft attached to the Wallerstein Produce Co., and that the defendant refused payment of said draft, then the plaintiffs had the right to resell the goods at defendant's risk, and you should find for the plaintiffs the amount claimed on the account."

Whatever may be said of this instruction as an abstract proposition of law, it is plainly erroneous and misleading, as applied to the undisputed evidence in this case. It is mainly predicated upon the jury believing that the goods in question were loaded on the car for shipment in pursuance of the contract; whereas, the contract calls for the apples to be "f. o. b. * * * * sight draft against documents," which we are told

means, that the goods must be "free on board," ready to go forward at once; and if instructions are given the railroad company by the seller to hold the car for any length of time, it is a violation of the contract. The correctness of this interpretation of the agreement is established by uncontradicted evidence, and fully justified the court in rejecting the instruction.

The opposing instruction of the defendant (which the court gave) told the jury, "that if they believe from the evidence that the plaintiffs took a bill of lading for the car of apples in question, with instructions to the railroad to hold the car until they could hear from the draft, and that this fact had not been communicated to the defendant, and shall further believe that this was not a compliance with the terms of their contract 'f. o. b.' New York State, to be delivered during the month of December, the defendant was not required under the law to pay said draft at sight, and they must find for the defendant."

The testimony as to the meaning of an "f. o. b." contract, as observed, is not controverted, and in the light of that interpretation, the instruction given by the court was plainly right. The duty of the sellers to deliver the goods to the carrier, "f. o. b. New York State," was a condition precedent to their right to demand payment of the draft, and that condition was not complied with in this instance.

This view of the case is conclusive, and no verdict other than for the defendant could have been properly found by the jury. The consideration of subordinate assignments of error is, therefore, unnecessary.

*Affirmed.*