## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### LAWSON V. HOBBS.

### March 18, 1917.

1. SALES—*Parol Evidence.*—A contract of sale provided that the subject of the sale, a steam engine, should be delivered f. o. b. Suffolk. It was the duty of the Court to construe the written contract. Parol evidence was inadmissible to show that the contract required the delivery of the engine in Norfolk.

2. F. O. B.—*Sales.*—Where qualifying words are used in connection with the words "free on board" or "f. o. b.," then the contract may be construed to have a different meaning, but where referring to shipments by rail, the words "free on board," or the letters "f. o. b." a certain place, are used, without any other words in the contract indicating a qualification of their meaning, they mean that the subject of sale is to be placed on board cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass to the buyer, and the property be wholly at his risk, and such words are not open to construction.

3. PAROL EVIDENCE—*Contract of Sale—F. O. B.*—Where a contract of sale is f. o. b. a certain point, evidence is admissible to show that it was understood between the parties that certain more specific directions were to be given. As for example, where the contract of sale only gave the word "Norfolk" as the destination, it might have been proper, if the case had turned upon that point, to permit parol evidence to the effect that the subject of the sale was to be shipped by a certain carrier, destined for the plant of the purchaser, within the delivery limits of the carrier at Norfolk. Such evidence would not contradict the written agreement, but would be consistent with it. But the case at bar did not depend upon this question, because the purchaser repudiated the contract before the engine reached Norfolk, and there was no contradiction of the vendor's statement to the effect that the carrier would have delivered it free of charge at purchaser's plant.

4. WITNESSES—*Cross-Examination—Reason for Repudiating Contract of Sale.*—A buyer testified that owing to delay in delivery he had been obliged to buy another engine in place of the one contracted for with the seller. Upon cross-examination he was asked what price he paid for this engine. This

question was proper, both to show the entire transaction, part of which had been introduced in the interest of the buyer, as well as to show the motive which might have possibly influenced the buyer in repudiating his contract.

5. SALES—*Delivery.*—Where a contract of sale required the engine to be shipped "at once," and there was no delay which the utmost diligence of the seller could have avoided, the contract was sufficiently complied with. In this case shipment was made within two days, as soon as the railroad furnished a car.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Tomlin,* for the plaintiff in error.

*Henry Bowden,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The facts, so far as they are necessary in order to determine the question here involved, are, that the plaintiff in error, Lawson, was a contractor, and while engaged in doing certain paving work on the streets of Norfolk under a contract with the city subjecting him to heavy penalties for every day's delay beyond the day agreed on for the completion of his contract, had the engine with which he was performing his work to break down so completely as to be incapable of repair. This occurred on Wednesday, October 20, 1915. Negotiations previously begun were thereupon concluded with the defendant in error, L. F. Hobbs, who was a manufacturer's agent engaged in selling engines, machinery, etc., in Norfolk, the result of which was that Hobbs sold an engine to Lawson, which at that time was located in Suffolk.

Their bargain was reduced to writing, and is in the following words and figures:

"Order No. 173-B-C.          Oct. 20, 1915.
    "L. F. Hobbs
SHIP TO   L. Lawson
AT   Norfolk                         WHEN   Once
HOW SHIP   Norfolk          SALESMAN   Hobbs
TERMS:                             BUYER   Lawson
1—A & S Steam engine—50 h. p.—first class rebuilt
condition—ready to steam f. o. b. Suffolk......$500
              " (Signed)   L. Lawson."

The seller understood that the engine was needed by the purchaser at once, and the purchaser knew that the engine was in a repair shop at Suffolk, twenty miles distant, that a railway car had to be procured, and that it had to be loaded thereon and by the carrier transported to Norfolk. Hobbs admits that before the contract was signed in Norfolk he told Lawson that "if it can be loaded tomorrow, Thursday, it should be here Friday morning."

Hobbs drove to Suffolk in his automobile on Wednesday afternoon, directed the shipment of the engine, and placed the order with the Norfolk and Western Railway Company for the car on Wednesday night. He went with Lassiter, who was Lawson's superintendent, to the Norfolk and Western station in Norfolk on Friday, and was informed that the engine had not arrived. It appears that the engine was not loaded in Suffolk until Friday because the necessary railway car was not furnished until then, and that it reached Norfolk on Saturday. Lawson states that on Friday he told Hobbs that he would not take the engine because he had failed to deliver it on that day, and Hobbs testifies that he did not tell him that on Friday, but that he did so on Saturday. Before the engine arrived in Norfolk, Lawson bought another engine for $380, and refused to accept the engine sold to him by Hobbs because of the delay in the delivery.

The controversy arises chiefly over the effort of the purchaser to introduce evidence to the effect that the contract required Hobbs to deliver the engine in Norfolk at his

(Lawson's) place of business on Friday, the order having been placed on Wednesday. The court below, however, refused to permit such parol evidence to be introduced, upon the ground that the parties had reduced their contract to writing, that there was no ambiguity therein as to the place of delivery, and that no evidence to vary or contradict it was admissible.

The court was of opinion that "*f. o. b. Suffolk*," in the contract so plainly indicated the place of delivery that parol evidence could not be introduced to contradict the agreement thereby evidenced. There seems to be no doubt as to the correctness of this ruling.

In the case of *Vogt* v. *Shienebeck*, 122 Wis. 491, 100 N. W. 820, 67 L. R. A. 757, 106 Am. St. 989, 2 Ann. Cas. 814, a similar question was decided. In that case 100,000 feet of one-inch pine lumber was sold f. o. b. cars, Butternut, Wisconsin. The seller claimed the right to introduce parol evidence to the effect that it was understood that the buyer was to furnish the cars, and the lower court permitted the introduction of the testimony. The appellate court reversed the judgment upon the ground that the written contract was plain, saying among other things that, "A sale f. o. b. cars means that the subject of the sale is to be placed on the cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer and the property be wholly at his risk, in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage *in transitu*." Many authorities are cited in support of this proposition, and it is stated that, "All of such authorities declare that a sale 'f. o. b. cars' so plainly indicates that the seller, without expense to the buyer, is to deliver the subject of the sale on cars ready to be taken out by the carrier, that the term is not open to construction."

It is not difficult to cite other cases in which the letters "f. o. b." at a designated place, without other qualifying words, as applied to the sale of personal property, have been thus construed, and, so far as we are advised, there is no difference of opinion as to their accepted meaning.

An instructive case in which qualifying words were used is that of *Detroit Southern R. Co.* v. *Malcolmson,* 144 Mich. 172, 107 N. W. 915, 115 Am. St. Rep. 390. This case construes a contract whereby a coal company agreed to furnish all the coal that might be required for the use of an illuminating company of Detroit for certain purposes, at "the following prices f. o. b. Michigan Central Railroad." The court there held that the place of delivery was at its destination on the Michigan Central tracks in Detroit. Words & Phrases (2d Ser.), Vol. 3, p. 1174.

Where qualifying words are used in connection with the words "free on board" or "f. o. b." then the contract may be construed to have a different meaning, but so far as we are informed there is no dissent from the proposition that where, referring to shipments by rail, the words "free on board," or the letters "f. o. b.," a certain place, are used, without any other words in the contract indicating a qualification of their meaning, the courts have construed them to mean that the subject of sale is to be placed on board cars for shipment, without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass to the buyer, and the property be wholly at his risk, and that such words are not open to construction. *Chandler Lumber Co.* v. *Radke,* 136 Wis. 495, 118 N. W. 186, 22 L. R. A. (N. S.) 713; *Capehart* v. *Furman F. & I. Co.,* 103 Ala. 671, 16 So. 627, 49 Am. St. Rep. 60.

The only case in which the term has been construed by this court, so far as we are advised, is *Aspegren Co.* v. *Wallerstein,* 111 Va. 570, 69 S. E. 957. In that case the seller, under contract to deliver goods f. o. b. New York, loaded the

cars but gave secret instructions to the carrier not to transport them until further notified; the motive of the seller being to assure himself that the purchase price would be paid. The court there declared that this was a violation of the contract by the seller, and that f. o. b. meant "free on board and ready to go forward at once."

We think that it was the duty of the court to construe the written contract, and that it would have been error to have permitted evidence to so vary, add to and contradict the contract as to make it appear that the place of delivery was at Lawson's plant on the Norfolk and Western in Norfolk, when according to the plain terms of the written contract the place of delivery was at Suffolk.

There is a line of cases upon which the plaintiff in error relies, which in effect permit the introduction of evidence in contracts of this character, so as to show that it was understood between the parties that certain more specific shipping directions were to be given. So, in this case, as the contract only gave the word "Norfolk" as the destination, it might have been proper, if the case had turned upon this point, to permit parol evidence to the effect that the engine was to be shipped by way of the Norfolk and Western railroad, destined for the plant of Lawson, the purchaser, within the delivery limits of the carrier at Norfolk. Such evidence would not contradict the written agreement, but would be consistent with it. *Marsteller* v. *Warden,* 115 Va. 353, 79 S. E. 332. The case, however, does not depend upon this question, because the purchaser repudiated the contract, either on Friday or Saturday, before the engine reached Norfolk, and there seems to be no contradiction of the statement of Hobbs to the effect that the Norfolk and Western would have delivered it free of charge at Lawson's plant. It may be that in a proper case such evidence would be admissible. Under the circumstances of this case it was immaterial, and the court properly rejected it.

We are clearly of opinion that it was the court's duty to construe the written contract, that it properly construed the place of delivery to be on the cars of the carrier at Suffolk, and that the evidence offered tending to show that the place of delivery was to be at the plant of Lawson at Norfolk was properly rejected.

This disposes of all the errors alleged except that referred to in the defendant's bill of exceptions No. 3. Lawson had testified on his examination in chief that on Saturday morning he bought another engine and put it to work on Saturday night. Upon cross-examination he was asked what price he paid for it, and the court required him to answer the question over the objection of his counsel, and this ruling is alleged to be erroneous.

Whatever may have been the motive for introducing the evidence, that he (Lawson) had been forced to buy another engine because of one day's delay in the delivery of the engine he had bought from Hobbs, that testimony had been introduced. From it his counsel were justified in arguing that he did it because of the necessities of his business. It was, therefore, perfectly proper for opposing counsel to introduce evidence that he only paid $380 for it and from this circumstance to argue that he repudiated his bargain because he desired to save $120, the difference between the price of the two engines.

The question was perfectly legitimate on cross-examination, both to show the entire transaction, part of which had been introduced in the interest of the plaintiff in error, as well as to show the motive which might possibly have influenced the plaintiff in error to repudiate his contract.

The contract required the engine to be shipped at once, and there was no delay which the utmost diligence of the vendor could have avoided, and we are of opinion that there is no error in the judgment.

*Affirmed.*