HETTRICK MANUFACTURING CO. v. SRERE.

1. FRAUDS, STATUTE OF — BROKER'S MEMORANDUM OF SALE ACKNOWLEDGED BY BOTH SELLER AND BUYER CONSTITUTED VALID CONTRACT.

  Where a purchase of goods was made through a broker, and his memorandum of sale was sent to the seller and

Effect of contract to ship goods f. o. b. upon passing of title, see notes in 62 L. R. A. 798; 33 L. R. A. (N. S.) 54.

also to the buyer, and was acknowledged by each, a valid contract resulted, although no acceptance was sent by the seller to the buyer direct.[1]

2. SALES—CONTRACT CALLING FOR DELIVERY "F. O. B. MILL" FIXES POINT OF DELIVERY.

A contract for the sale of goods calling for delivery "f. o. b. mill," means free on board and ready to go forward at once, fixes the point of delivery to the carrier, and the buyer is not required to accept the goods until such delivery is made.[2]

3. SAME—CONTRACT PRICE OF GOODS NOT RECOVERABLE UNTIL DELIVERY MADE AND TITLE PASSED.

Where, at the time an action was brought by the seller for the contract price of goods sold, the goods had never been set apart for the buyer or delivered f. o. b. to a carrier, as required by the contract, there had been no delivery in fact or law, the property had not passed to the buyer, and, therefore, the seller could not recover the contract price, but its remedy, if any, is for breach of the contract (Uniform Sales Act, 3 Comp. Laws 1915, §§ 11848, 11850, 11874, 11895).[3]

Error to Wayne; La Joie (Ernest P.), J. Submitted April 27, 1926. (Docket No. 76.) Decided June 7, 1926. Rehearing denied October 4, 1926.

Assumpsit by the Hettrick Manufacturing Company against Alfred Srere and others, copartners as Srere Bros. & Company, on a contract of sale. Judgment for plaintiff. Defendants bring error. Reversed.

*Friedman, Meyers & Keys,* for appellants.

*Max Kahn* (*Leopold D. Mayer,* of counsel), for appellee.

WIEST, J. In this case plaintiff was granted a judgment for the full purchase price of cotton goods sold defendants but in fact never delivered. At the time of the trial the goods were in a mill warehouse at Fall

---

[1]Frauds, Statute of, 27 C. J. § 307; [2]Sales, 35 Cyc. p. 318 (Anno); [3]Id., 35 Cyc. p. 533.

River, Massachusetts.    Defendants review by writ of error.

The questions may be grouped under the following claims:

(1) There was no valid, binding contract of sale.

(2) Plaintiff never performed, offered to perform, or was in position to perform the alleged contract of sale.

(3) Plaintiff could not recover the purchase price of the goods; its proper remedy being an action for damages.

Plaintiff is an Ohio corporation, jobbers and distributors of cotton goods.    Defendants are copartners under the name of Srere Bros. & Company, and are jobbers of cotton goods in the city of Detroit.

In August, 1920, defendants directed M. Jacob & Bros., Inc., broker in cotton goods, New York city, to purchase for them 50,000 yards of cotton cloth of a specified standard weave and weight.    The broker negotiated the purchase from plaintiff and made out and sent a memorandum thereof, in trade form, to seller and buyer, together with an acknowledgment to be signed and returned by each.    Defendants signed and sent their acknowledgment to the broker, and plaintiff did likewise.    Defendants insist it was necessary, under the statute of frauds, for plaintiff to send them an acceptance of the contract of sale.    The acknowledgment sent the broker, by plaintiff, was an acceptance of the terms of sale contained in the memorandum, and was sufficient.    The broker was defendants' agent, duly authorized to make the purchase for them, and, of trade necessity and in law, the broker was also plaintiff's agent with authority to make the sale and evidence the same by what is known as broker's notes and notice to the parties calling for acknowledgments.    The broker having brought the parties to a deal, and having furnished them with the contract terms, and received from each acknowledg-

ment thereof, there was acceptance by both parties and a valid contract.

In *Thomas Henderson & Co.* v. *Baron,* 164 N. Y. Supp. 697, it was held, quoting from the syllabus:

"Where a sale of goods was made through a broker, and his memorandum of sale was delivered to the purchaser, and the duplicate copy sent to the seller, such memorandum constituted a valid contract of sale."

See, also, *Butler* v. *Thomson,* 92 U. S. 412; *Bibb* v. *Allen,* 149 U. S. 481 (13 Sup. Ct. 950); *Kinney* v. *Horwitz,* 93 Conn. 211 (105 Atl. 438); *Roach* v. *Lane,* 226 Mass. 598 (116 N. E. 470); *Cohn-Hall-Marx Co.* v. *Psaki,* 169 N. Y. Supp. 72.

Without delivery in fact of the goods was there such performance of the contract by plaintiff that the property passed to defendants? The contract called for October delivery with shipping directions later. Defendants never sent shipping directions. Plaintiff has a mill at Toledo, Ohio, but does not manufacture cotton goods. The contract called for delivery f. o. b. mill. F. O. B. means free on board and ready to go forward at once. *Aspegren & Co.* v. *Wallerstein Produce Co.,* 111 Va. 570 (69 S. E. 957).

The very term evidences a sale by shipment; an appropriation of goods to the sale by segregation and positive identification through actual delivery to a carrier. Defendants were not required to accept the goods until the same were delivered f. o. b. There was no delivery f. o. b. anywhere, so we do not have to determine whether the place of such delivery, under the contract, was plaintiff's mill at Toledo or the mill at Fall River, Massachusetts. Delivery may be fixed at a mill, but delivery "f. o. b. mill" fixes a point where delivery must be made f. o. b. to a carrier.

In *Fairfax Textile Mills* v. *Feingold,* 273 Pa. 73 (116 Atl. 525):

"Plaintiff sued to recover the sum of $5,184 with interest, claimed to be due under a contract for the sale of seventy-two pieces of Burlington shirting to be delivered 'about November-December 1920    *    *    * f. o. b. New York.    *    *    *    The acceptance of a shipment by a railroad or other common carrier shall constitute a delivery.'"

Defendant in that case canceled the order.    The goods were set aside for defendant at plaintiff's place of business.    The defense was failure of plaintiff to make delivery f. o. b. New York to either a railroad or other common carrier.    The court held:

"The setting aside of the goods at its place of business was not a compliance on its part with the terms of the agreement.    Plaintiff having treated the sale as an existing contract and having failed to comply with the conditions imposed upon it cannot now recover for the price of the merchandise."

See, also, *Bready* v. *B. A. Wechsler Co.*, 200 N. Y. App. Div. 78 (192 N. Y. Supp. 660).

The 50,000 yards of cotton cloth, here involved, constituted 16 bales as put up at the mill.

September 29, 1920, plaintiff placed a purchase order for the goods with C. H. Pope & Company, Inc., broker. The purchase was made by the broker from Coleman & Company, factors, New York, October 14, 1920.    In turn Coleman & Company, the same day, purchased the merchandise from M. Lowenstein & Sons, Inc., of New York.    M. Lowenstein & Sons, September 21, 1920, through Aldrich & Hawkins, brokers, placed an order with the Union Cotton Manufacturing Company of Fall River, Massachusetts, for 180,000 yards of cotton cloth, terms cash, ten days, delivery f. o. b., Fall River, Massachusetts.    The goods so ordered were then in stock at the mill.    November 27, 1920, Coleman & Company wrote M. Lowenstein & Sons to release and hold, subject to instructions of the Hettrick Manufacturing Company, 8 bales of the cloth.    Up to the

time of suit plaintiff had never informed defendants that the goods were in a mill at Fall River, Massachusetts. October 24, 1921, Lowenstein & Sons directed the Union Cotton Manufacturing Company to transfer and hold, subject to the order of Coleman & Company, 8 bales of the cotton cloth, and April 10, 1922, gave like order for another 8 bales, constituting in all nearly 50,000 yards. October 24, 1921, Coleman & Company directed the Union Cotton Manufacturing Company to transfer and hold, subject to the order of the Hettrick Manufacturing Company, 8 bales of the cloth, and, April 11, 1922, wrote the Union Cotton Manufacturing Company, calling attention to the fact that Lowenstein & Sons had released another 8 bales directly to the Hettrick Manufacturing Company. There appears to have been some misunderstanding, for in that letter Coleman & Company asked that the matter be straightened out. April 18, 1922, the Union Cotton Manufacturing Company wrote the Hettrick Manufacturing Company as follows:

"On October 24, 1921, M. Lowenstein & Sons, Inc., wrote us to transfer and hold subject to the order of Coleman & Company, eight bales Nos. 1314-1321, and on October 24, 1921, Coleman & Company wrote transferring eight bales Nos. 1314-1321 to the Hettrick Manufacturing Co., and to hold subject to their order. On October 27, 1921, Hettrick Mfg. Co. wrote that they had been informed by Coleman & Company that the Union Manufacturing Co. made up a lot of goods bales Nos. 1306-1321. On November 2, 1921, Hettrick Mfg. Co. wrote us again and wanted us to send them in writing a statement showing that we had bales Nos. 1306-1321 and when we made same. We wrote Hettrick Mfg. Co. that we made bales Nos. 1314-1321 during the week ending June 19, 1920. On April 7, 1921, they wrote us for a deposition of the sixteen bales Nos. 1306-1321.

"What we would like to find out is how you people know anything about the sixteen bales when M. Lowenstein & Sons, Inc., as far as we can find out,

has only turned over eight bales Nos. 1314-1321. Please advise."

This suit was commenced March 7, 1921. At that time the goods at the mill had not been set over to or appropriated by plaintiff, but were at the mill as a part of the larger purchase standing in the name of Lowenstein & Sons. So plaintiff, when it invoiced goods to defendants, and at the time suit was brought, had no control over or property in goods set apart at the mill, although plaintiff had previously paid Coleman & Company for the purchase, and the Union Manufacturing Company had received its pay for the goods. It is manifest that property in particular bales never passed to defendants before this suit was commenced, for the bales had not been set apart from Lowenstein's purchase to plaintiff, and plaintiff could not and did not deliver, in fact or in law, the cloth sued for. This is fatal to plaintiff's right to recover the price of the goods on the theory of property therein having passed to defendants. When defendants refused to take the goods there had been no delivery in fact or in law, and the property in the goods had not passed to defendants. This being true, plaintiff could not recover the contract price. If recovery is had by plaintiff, it must be for breach of contract.

Section 11848, 3 Comp. Laws 1915 (uniform sales act), provides:

"No property passes until goods are ascertained." * * *

Section 11850 provides:

"Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee, whether named by the buyer or not, for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section twenty. * * *

"If the contract to sell requires the seller to deliver

the goods to the buyer, or at a particular place, * * * the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

Section 11895 provides:

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damages of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or if no time was fixed for acceptance, then at the time of the refusal to accept."

At the time the invoice was sent to defendants, and up to the time of trial, the goods were in the warehouse of the manufacturer thereof at Fall River, Massachusetts. When the invoice was sent, and at the time this suit was commenced, there had been no appropriation of specific goods to plaintiff.

The uniform sales act (3 Comp. Laws 1915, § 11874, subd. 3), provides:

"Where the goods at the time of the sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver to the buyer, unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf."

No such notice was ever given defendants.

In *Borenco Importing Corp.* v. *Sperber*, 205 N. Y. App. Div. 417 (199 N. Y. Supp. 469), it was held in accordance with the statute just mentioned:

"The delivery of goods, which at the time of the sale were in the possession of a warehouseman, is not shown

in an action to recover the purchase price by proof merely that the seller mailed to the warehouseman what purported to be a transfer order of the goods to the buyer's account and at the same time mailed a duplicate order to the buyer accompanied by an invoice and trade acceptance, for under such circumstances, subdivision 3 of section 124 of the personal property law (section of our uniform sales act above quoted) requires the third person to acknowledge to the buyer that he holds the goods in his behalf before delivery can be complete."

Plaintiff had no right to recover the contract price without showing that title to the goods passed to defendants. If title did not pass the remedy, if any, is for damages. In order for title to pass there had to be delivery at the place and in the manner specified in the contract. *Harbison* v. *Propper*, 183 N. Y. Supp. 508. The specific goods not having been segregated, nor marked for the buyer nor delivered to the carrier for the buyer, and the contract providing for segregation and delivery, "f. o. b. mill," property in the goods did not pass to defendants.

The judgment is reversed, and a new trial granted, with costs to defendants.

Bird, C. J., and Sharpe, Snow, Steere, Fellows, Clark, and McDonald, JJ., concurred.