WHITE OAK TRANSPORTATION COMPANY, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

SEACONNET COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

NORTHERN COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

C. H. SPRAGUE & SON COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket Nos. 18088, 18089, 34945, 34946.
Promulgated October 9, 1931.

*William Williams, Esq.*, and *Edmund B. Quiggle, Esq.*, for the petitioners.

*Eugene Meacham, Esq.*, and *C. E. Lowery, Esq.*, for the respondent.

314

OPINION.

BLACK: By the agreed statement of facts which was filed in this proceeding at the hearing, all issues have been eliminated except those which relate to inventories and the statute of limitations.  As

to these last named issues petitioners make five contentions which we shall discuss and rule upon in their order.

1

It is contended that in computing the net income of the Seaconnet Coal Company, C. H. Sprague & Son Company, and Northern Coal Company for the year 1920, they should be permitted to include in their inventories as of December 31, 1920, at its market price on that date, the coal remaining to be delivered under their respective outstanding contracts of purchase. Respondent has disallowed this on the ground that title to the coal to be delivered petitioners in 1921 on their contracts had not passed and could not be properly included in inventories as of December 31, 1920; that the losses claimed were not true losses but only anticipated losses.

Petitioners and respondent, in support of their respective contentions, cite two leading cases of the Board. Petitioners cite *Amalgamated Sugar Co.*, 4 B. T. A. 568, and respondent cites *Haas Bros.*, 3 B. T. A. 113, affirmed by the Circuit Court of Appeals, Ninth Circuit, *Haas Bros.* v. *McLaughlin*, 39 Fed. (2d) 381.

We think the facts in the instant case bring it within the rule announced by this Board in *Haas Bros.*, *supra.* Clearly, the question of inventories is involved in the settlement of the issue now under discussion. In fact the question of what could properly be included in petitioners' inventories as of December 31, 1920, is the main question which we must decide in ruling upon petitioners' point No. 1. Concerning the subject of inventories, the court said in *Haas Bros.* v. *McLaughlin*, *supra*, as follows:

* * * At the time the contracts were a live issue, Regulation 45, article 1581 (Revenue Act of 1918, promulgated Jan. 28, 1921; amended March 3, 1922, Treasury Decision 3296, vol. 24, 1922) applicable at the time, which has the force of law, provided: "A purchaser should include in inventory merchandise purchased, title to which has passed to him; although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected."

Claiming losses on property in income tax returns, when not supported by inventory as required by law, is not persuasive. The appellant may not "blow hot and cold" at the same time. Its conduct is in harmony with the last provision of Regulation 45, supra, and corroborates the record, that the merchandise was not identified, nor were the goods set apart to, or used by, appellant at any time during 1919 and 1920, respectively. The fact that appellant paid storage and insurance for December, 1920, in view of the record, is of no importance.

In *Amalgamated Sugar Co.*, *supra*, urged by petitioners as the principal authority in support of their contention, the main question involved was in what year the taxpayer should accrue income

on its books from sales contracts of sugar which had actually been made. The controlling factor in that case was that the taxpayer had for years consistently kept its books on the basis of accruing as income, sales of sugar already in its warehouses, just as soon as sold, although actual delivery of the sugar might not take place until some time thereafter, in some cases running into the following year.

The question is different in the instant case. We think the distinction between *Amalgamated Sugar Co.*, *supra*, and the facts such as we have before us in the instant case was properly stated by the Board in *Barde Steel Products Corporation*, 14 B. T. A. 209, at pages 221 and 222 of the printed report. Cf. *Adams-Roth Baking Co.*, 8 B. T. A. 458.

2

Petitioners' next contention is that, in any event, C. H. Sprague & Son Company should be permitted to include in its inventory as of December 31, 1920, that portion of said coal, to wit, 4,516.79 net tons, which, during the year 1920 and on or prior to December 31 thereof, had been actually loaded on cars for shipment to it by the Boone County Coal Corporation, and as to which shipment had already commenced; and that the Northern Coal Company should be permitted to include in its inventory as of December 31, 1920, that amount of the coal disallowed as part of its inventory as aforesaid, to wit, 415.42 net tons, which was actually loaded on cars for shipment to it by the Raleigh Smokeless Coal Company in the year 1920, and as to which shipment had commenced on or prior to December 31 thereof. We think petitioners are correct in this contention and we sustain them. The contracts under which said coal was delivered called for delivery f. o. b. at the mines. Therefore, as soon as the coal was loaded on the cars for the account of the purchasers, the title passed to them. *Lamson* v. *Hibbs*, 120 Va. 693; 91 S. E. 750; *Dentzel* v. *Island Park Association*, 229 Pa. 403. As a general rule, whenever title to goods which have been identified has passed to the buyer, he is entitled to include them in his inventory. *Haas Bros.*, *supra; Amalgamated Sugar Co.*, *supra; Adams-Roth Baking Co.*, *supra; Barde Steel Products Corporation*, *supra*.

3

Petitioners next contend that C. H. Sprague & Son Company should be permitted to deduct as an accrued liability for the year 1920 the amount of $4,803.56, representing the difference between the contract price of the coal which it failed to take when tendered to it by Quemahoning Creek Coal Company and the price at which such

coal was sold in the open market by Quemahoning Creek Coal Company. We sustain petitioners in this contention. The evidence shows that the petitioner C. H. Sprague & Son Company kept its books on the accrual system. The liability was one which petitioner admitted and accrued as a liability on its books and respondent erred in disallowing it. *Lucas* v. *American Code Co.*, 280 U. S. 445.

4

Petitioners in their fourth point ask that it be held that no additional assessment of income and profits taxes for the year 1920 can be made against either Northern Coal Company or C. H. Sprague & Son Company on account of the tolling of the statute of limitations. We think this contention must be sustained.

The consolidated return for the affiliated corporations for the year 1920 was filed by the Seaconnet Coal Company April 12, 1921, and under the statute of limitations applicable to the year 1920, the period of limitation as to this return in ordinary course would expire April 12, 1926.

The return contained elaborate schedules showing the separate income and expenses of each one of the affiliated corporations from which its net income could be calculated and the amount of taxes allocable to each determined. Under these circumstances the return acted as a return for each of the separate corporations and the statute of limitations applicable thereto began to run just as if a separate return had been filed by each of the several corporations. *Stetson & Ellison*, 11 B. T. A. 397; affirmed on review, 43 Fed. (2d) 553. No claim is made that the statute of limitations has run against the assessment and collection of so much of the deficiencies as is properly chargeable to petitioners Seaconnet Coal Company and White Oak Transportation Company, but that it has run against the assessment and collection of deficiencies against the Northern Coal Company and C. H. Sprague & Son Company.

The facts with reference to the execution and filing of waivers by these two last named petitioners have been fully stated in our findings of fact. The first waivers signed extended the time in which the Commissioner might make assessment and collection of any additional tax due for 1920 to December 31, 1926. If the deficiency notices to petitioners Northern Coal Company and C. H. Sprague & Son Company had been mailed within that time, they would have been timely. But this was not done and the statute of limitations had run in favor of these two petitioners prior to the time the next waivers were executed, to wit, April 12, 1927.

Prior to this time, February 26, 1926, the Revenue Act of 1926 was passed, which contained section 1106, which not only barred the remedy but extinguished the liability. Therefore the waivers executed on April 12, 1927, by the Northern Coal Company and C. H. Sprague & Son Company were ineffective. The deficiency notices which were mailed to them on December 31, 1927, on the strength of these waivers were too late. *Steiner Mfg. Co.*, 18 B. T. A. 740; *United States Refractories Corporation*, 23 B. T. A. 872; *Knight-Campbell Music Co.*, 23 B. T. A. 1233.

5

Petitioners' fifth and last contention is that the Seaconnet Coal Company and White Oak Transportation Company are liable only for their proportional share of the income and profits taxes of the affiliated group for the year 1920, computed on the basis of their respective net incomes. We think this contention must be sustained.

Respondent contends that even though the statute of limitations has run against the assessment and collection of any deficiency against either Northern Coal Company or C. H. Sprague & Son Company, nevertheless the letter which they signed dated June 3, 1927, directing the Commissioner of Internal Revenue that any deficiency in their tax as finally determined be assessed against the Seaconnet Coal Company, is effective to give the Commissioner the right to assess and collect from the Seaconnet Coal Company any deficiency for 1920 due by Northern Coal Company and C. H. Sprague & Son Company. We do not think so.

If, because of section 1106 of the Revenue Act of 1926, the waivers executed by these two petitioners on April 12, 1927, were ineffective to revive any liability against petitioners for the tax, we think that for the same reason any statement in the letter dated June 3, 1927, authorizing the Commissioner to collect from the Seaconnet Coal Company was ineffective to give the Commissioner any right to assess and collect from Seaconnet Coal Company taxes computed against Northern Coal Company and C. H. Sprague & Son Company which had already been extinguished by section 1106 of the Revenue Act of 1926. The letter could not revive them.

It may be stated in this connection that the letter dated June 3, 1927, was the first and only agreement entered into by the Northern Coal Company and C. H. Sprague & Son Company that their taxes for 1920 should be assessed and collected from the Seaconnet Coal Company. There had been no implied agreement that this should be done. The testimony at the hearing was to the definite and positive effect that the only agreement that this should be done was

the written agreement dated June 3, 1927, introduced at the hearing by respondent.

Reviewed by the Board.

> *Decision will be entered for petitioner Northern Coal Company in Docket No. 34945, and for petitioner C. H. Sprague & Son Company in Docket No. 34946. As to petitioner Seaconnet Coal Company, Docket No. 18089, and petitioner White Oak Transportation Company, Docket No. 18088, decision will be entered under Rule 50.*

SMITH and ARUNDELL dissent on the fourth and fifth points.