**ELECTRIC FURNACE CO. v. FIRE ASS'N OF PHILADELPHIA.**

Civ. No. 26107.

United States District Court,
N. D. Ohio, E. D.

July 16, 1952.

See also D.C., 10 F.R.D. 152.

James C. Davis (of Squire, Sanders & Dempsey), Cleveland, Ohio, for plaintiff.

Lucian Y. Ray (of McCreary, Hinslea & Ray), Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

This is an action to recover indemnity for loss under the terms of an insurance policy issued by defendant to plaintiff. The loss consists of damage to one of plaintiff's furnaces which exploded on February 16, 1948 while located at the Altha Works of the Crucible Steel Company in Harrison, New Jersey. There is no issue as to the plaintiff's ownership and control of the furnace at the time of the explosion, and it is conceded that the furnace was "finished merchandise in the course of installation" within the meaning of those terms in the policy of insurance. Defendant resists payment upon three grounds, only two of which need be considered here. By reason of the rulings of the court excluding testimony offered by defendant, there is no evidence in the record to support the claim that plaintiff procured the policy through misrepresentation of material facts. The remaining grounds of defense are (1) that the furnace was an f. o. b. shipment and expressly excluded from coverage under the terms of the policy, and (2) that plaintiff, in assuming responsibility for the loss and in failing to make a claim against the Crucible Steel Company or its underwriters, prejudiced the subrogation rights of defendant in violation of the terms of the policy.

A jury was waived and the case submitted to the court upon an agreed statement of facts which, so far as necessary to an understanding of the decision reached, may be summarized as follows:

In May, 1947 defendant issued a floating policy of insurance to plaintiff effective for a period of one year beginning May 5, 1947. The premium was $200, and the face amount of the policy $20,000. A provision of the policy limited defendant's liability to $10,000 for "any loss at any one place", and it is agreed that although plaintiff's actual loss exceeds the face amount of the policy, this limitation governs, and plaintiff's indemnity, if entitled to recover, is limited to the sum of $10,000. Among other things the policy insured against loss by fire, explosion, or damage caused by collision, derailment or overturn of transporting conveyance. The coverage clause of the policy provides:

"1. On the following scheduled articles, the property of the Assured: consisting of Patterns, Dies, Molds, Castings, Structural Steel, Plates, Tools and all Materials Raw, in process, or finished Merchandise in course of Installation (excluding all F.O.B. shipments) anywhere in the United States of America excluding premises owned, leased or controlled by the assured."

The policy also contains a provision exempting the defendant from liability if subsequent to the occurrence of the loss the "insured shall in any way prejudice the subrogation rights of the company."

Plaintiff is a manufacturer of furnaces with its principal office and plant at Salem, Ohio. Some time after May, 1947 plaintiff agreed to sell Crucible Steel Company four furnaces to be delivered and installed at the purchaser's plant in Harrison, New Jersey. By the terms of this agreement plaintiff was to ship the component parts of the furnaces to the mill of Crucible Steel in New Jersey and there furnish the engineering services and labor necessary to erect and install the furnaces in good working order. Title was to remain in plaintiff until the furnaces were accepted and paid for by Crucible. In its original proposal plaintiff quoted its prices "f. o. b. cars point of shipment." Defendant's acceptance specified "shipment f. o. b. our plant." Subsequently, however, Crucible agreed to and did pay the freight from Salem, Ohio to New Jersey. The component parts of the furnaces were shipped and upon their arrival at Crucible's plant plaintiff began and finished the work of erecting and installing the furnaces. On February 16, 1948 the furnace in question was completely installed by plaintiff and was being tested by one of its employees when the explosion occurred. No one other than representatives or employees of the plaintiff was in control of the erec-

tion, installation, or testing of the furnace at or before the time of the explosion. After the explosion, representatives of plaintiff made an investigation to determine its cause. At the conclusion of the investigation plaintiff advised Crucible Steel that it accepted responsibility for the loss and would repair the damage to the furnace at no cost to Crucible. Plaintiff repaired the damage but made no demand upon Crucible or its underwriters for payment of the loss.

It is stipulated "that in connection with the sale of its furnaces plaintiff erects and installs substantially all of them on the premises of the purchaser, with title being retained by the plaintiff until the furnace has been completely erected and paid for, and that the transaction in question, in respect to the method of shipment, retention of title and payment of freight was in conformance with a substantial portion of the plaintiff's transaction of its general business."

In support of its claim that the loss was not within the provision of the policy "excluding all f. o. b. shipments" plaintiff contends that the letters "f. o. b." are to be construed in their technical legal sense as meaning a delivery of goods to a carrier "free on board" under circumstances where title passes to the buyer and where, after such delivery to the carrier, the buyer has control of the goods and assumes the risk of their loss or damage.

Defendant's position is that the clause "excluding all f. o. b. shipments" is a "descriptive phrase designed to confine liability under the policy to such goods of the plaintiff as were not transported to the premises of its customers under a free on board arrangement," and that the loss in question is within the terms of the exclusion.

▆▆▆▆ Contracts of insurance must receive a practical, fair, and reasonable interpretation consonant with the apparent object and intention of the parties. 29 Am. Jur. 174, Sec. 159. Where the terms of an insurance policy are ambiguous they are to be construed most strongly against the insurer.

The contract of insurance was evidenced by a floating policy and, like all such policies, covered the property of the plaintiff that was changing in location and amount and not covered by specific insurance. By its terms the policy expressly excluded property located on premises owned or controlled by plaintiff. The meaning of this provision is clear and is not in controversy here. The purpose of the policy was to provide insurance upon all of plaintiff's property within the described categories, except such as was located on its own premises. This included property in the course of transportation and property situated on the premises of plaintiff's customers. Also excluded from coverage were "all f. o. b. shipments." It is the doubtful meaning of this latter phrase that must be resolved.

▆▆▆▆ It is uniformly understood that the letters "f. o. b." are abbreviations of the words "free on board." This phrase is customarily used in sales or contracts of sale where goods are to be shipped by carrier to the buyer. The phrase "f. o. b." is of protean significance. It has been construed variously—to refer to the payment of freight charges—as fixing the place of delivery—as designating the point of shipment—as qualifying the price—and in its technical legal sense as effecting the transfer of title and control of the property. See 17 Words and Phrases, F.O.B., p. 194 et seq., and cases cited therein. Invariably the courts have construed the phrase to mean that which the parties intended it should mean in the light of the factual context in which it was employed. No case has been cited nor has careful research discovered any in which this phrase appears in a contract of insurance.

The precise question here to be determined is—What did the insurer and the insured intend to exclude from the policy by the phrase "excluding all f. o. b. shipments"? It will be helpful to a determination of that question if inquiry first be made as to the extent and scope of the risks covered by the policy.

A substantial part of plaintiff's business was the sale of furnaces on the basis of a

title-retention plan. Under this plan the component parts of the furnaces were manufactured by plaintiff at its factory in Salem, Ohio and shipped to its customers throughout the country. From the time the parts moved from plaintiff's factory until the complete heating units were accepted and paid for by the customers, title to the subjects of sale remained in plaintiff. That this method of doing business was known to the defendant insurer is apparent from the language of the policy, which, among other things, specifically covered "finished merchandise in course of installation * * anywhere in the United States." Considered together with the other terms of the policy the quoted language by clear implication refers to property sold and delivered by plaintiff to its customers under an agreement by which title was reserved. The plain import of the language of the policy is to provide indemnity for loss to plaintiff's property while located elsewhere than on its own premises and during the time that ownership and control of the property remained in plaintiff. In addition to property which was not the subject of sale, this would include risks arising under plaintiff's title-retention plan of doing business. Embraced within this coverage were shipments of property title to which was vested in plaintiff. This being so, the natural inference arises that the provision "excluding all f. o. b. shipments" was designed to exclude those shipments where delivery to a carrier "free on board" was effective to divest the plaintiff of its ownership and control of the property. Such a construction serves a rational purpose and is consistent with the objects of the policy. However, no reasonable purpose is served by defining the phrase "f. o. b." as including all the various connotations of that term. Under such a construction an f. o. b. designation that merely referred to the payment of freight, or an f. o. b. quotation that merely fixed the price, would have the effect of destroying the protection of the policy. Yet in either such case plaintiff's ownership and control of the property would be unimpaired and the risks covered by the policy would be precisely the same as though the phrase "f. o. b." had not been

used in the contract of sale. Such a construction, being without support in reason, must be rejected. It is reasonably to be inferred, therefore, that the parties used the term "f. o. b." in its well-defined legal and technical sense. In Lawson v. Hobbs, 120 Va. 690, 91 S.E. 750 at page 751, the term is defined as follows:

"Where qualifying words are used in connection with the words 'free on board' or 'f. o. b.,' then the contract may be construed to have a different meaning, but, so far as we are informed, there is no dissent from the proposition that where, referring to shipments by rail, the words 'free on board,' or the letters 'f. o. b.,' a certain place, are used, without any other words in the contract indicating a qualification of their meaning, the courts have construed them to mean that the subject of sale is to be placed *on board cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass to the buyer; and the property be wholly at his risk, and that such words are not open to construction.* Chandler Lumber Co. v. Radke, 136 Wis. 495, 118 N.W. [185] 186, 22 L.R.A.,N.S., 713; Capehart v. Furman F. & I. Co., 103 Ala. 671, 16 So. 627, 49 Am.St.Rep. 60." (Emphasis supplied.)

Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 13 N.W.2d 347; Kachurin v. Barr, 272 App.Div. 391, 71 N.Y.S.2d 629 (affirmed 297 N.Y. 889, 79 N.E.2d 736;) Birdsong & Co. v. American Peanut Corp., 149 Va. 755, 141 S.E. 759; Van Doren on Shipments, pp. 203-204.

Defendant does not question the correctness of the foregoing definition, but urges that the issue of "title" is not involved in the interpretation of the policy. However, as indicated above, the court is of the opinion that title to the property is an essential condition of plaintiff's right of recovery under the policy and must be taken into account in any consideration of the meaning of the language of the exclusionary provision.

There was nothing to prevent plaintiff from selling its furnaces or any of the other enumerated items of property described in the policy on the basis of a "free on board" delivery effective to transfer title and control to the purchaser. Properly construed, the provision in question would exclude all such transactions from the coverage of the policy. This, I think, was the purpose sought to be accomplished by the phrase "excluding all f. o. b. shipments." Such a construction would restrict the coverage to property owned by plaintiff, whether sold by it or not, during the time the property was removed from plaintiff's premises. It would confine the defendant's liability to losses occurring while the property was owned by plaintiff and under its control. It would safeguard the insurer against responsibility for loss in cases where the title and control of the property had passed to strangers to the contract of insurance.

In its effect the provision here under consideration is similar to those provisions against alienation frequently to be found in other forms of insurance. The effect of alienation of property covered by a contract of insurance is stated in 29 Am. Jur. 504 as follows:

"In the absence of a provision in the policy to the contrary, a change of title to the property insured, in whole or in part, does not avoid the policy if at the time of a loss the insured has an insurable interest, but an alienation of the insured property will end the policy as to the insured if he retains no further interest in the property."

It is to be noted that where they are reasonable, provisions against alienation are usually regarded as valid. ibid. p. 505. Although it is not necessary to decide the question, the exclusionary provision in the policy was undoubtedly effective to exclude any insurable interest of plaintiff less than title to the property.

Under the facts of this case, the use of the phrase "f. o. b." in the agreement between plaintiff and Crucible Steel had no effect upon plaintiff's title and control of the furnace at the time the loss occurred. I am of the opinion that the loss was within the terms of the policy.

An extended discussion of defendant's second defense is unnecessary. Defendant asserts that its subrogation rights under the policy were prejudiced by reason of plaintiff's assumption of responsibility for the damage to the furnace and its failure to make a claim therefor against Crucible Steel or the underwriters of that company. The agreed statement of facts contains a stipulation that plaintiff alone was in control of the furnace at the time of the explosion. Defendant makes no claim that the negligent conduct of Crucible Steel or any independent contractor caused the explosion. Nor is it suggested that the loss was covered by a policy issued to Crucible Steel by its underwriters. Defendant's argument is premised upon the sole ground that it was prejudiced by reason of plaintiff's failure to proceed against Crucible Steel or someone else for recovery of the loss. The law does not require the doing of that which is vain and futile. In the state of the record it does not appear that plaintiff had a right of action against any third party. As was said in Weyerhaeuser Timber Co. v. Marshall, 9 Cir., 102 F.2d 78, 81:

"* * * appellant has not been prejudiced by appellee's failure to proceed against the third party, for since no right of action existed against the third party there could be no prejudice to the right of subrogation."

The Supreme Court, in Chapman v. Hoage, 296 U.S. 526, 531, 56 S.Ct. 333, 336, 80 L.Ed. 370, succinctly stated the extent of an insurer's right to subrogation as follows:

"The insurer is given a right of subrogation, not to enable him to avoid his undertaking to indemnify, but that it may not be enlarged beyond that of indemnity. Standard Marine Insurance Co. v. Scottish Metropolitan Assurance Co., Ltd., 283 U.S. 284, 288, 51 S.Ct. 371, 75 L.Ed. 1037. He is not

prejudiced by failure to prosecute a claim after it has been demonstrated to be groundless."

In my opinion, the principle announced in the foregoing authorities is controlling. Its application here is decisive against defendant's claim.

For the reasons indicated, judgment may be entered for plaintiff in the sum of $10,-000, with interest from the 16th day of February, 1948.