# Staunton.

## T. R. FULTON v. W. R. GRACE & CO.

September 17, 1925.

1. SALES—*Payment—Refusal of Seller to Deliver—Breach of Contract—
   Case at Bar.*—In the instant case plaintiff had contracted with
   defendant, through an agent of defendant, for purchase of defend-
   ant's wool. Plaintiff knew nothing of any contract between defend-
   ant and his agent for financing defendant's purchases of wool or
   paying for the wool except what was set out in sales note. Plaintiff
   was to pay nothing until the wool was loaded on cars, and then only
   upon presentation of the bills of lading by defendant's agent to the
   plaintiff. Under the contract between defendant and its agent the
   agent was to reimburse itself for advances in financing the transac-
   tion, pay their commission, and pay defendant the balance. The
   agent was obligated to advance sufficient funds to pay the contract
   price of the wool. Upon the refusal of a party representing both
   plaintiff's and defendant's agent to pay defendant in full for his wool
   when loaded on the cars, defendant refused to deliver any wool at
   all.

   *Held:* That defendant breached his contract.

2. INTERPRETATION AND CONSTRUCTION—*When Construction for Court.*—
   The construction of written documents is exclusively for the court.

3. AGENCY—*Documentary Evidence to Show Agency—Construction for
   Court.*—In the instant case, an action for breach of contract of sale,
   the documentary evidence in the case showed clearly that a com-
   mission company was acting as agent for defendant in making the
   sale, and the trial court was right in so holding as a matter of law.

4. SALES—*Sale by Agent—Breach of Contract.*—In the instant case, an
   action for breach of contract of sale, a commission company acting
   as agent for defendant, not having authority to close a contract
   for the purchase of defendant's wool after the failure of plaintiffs'
   representative to agree with defendant on a price, engaged one M.
   to undertake to secure a bid from plaintiff acceptable to defendant.
   This M. did. All this was within the scope of the commission com-
   pany's authority, their agency having been fully established by the
   evidence. This offer was submitted to the defendant by the com-
   mission company and accepted by him by telegram.

   *Held:* That the testimony of M. and the sales note executed by him
   were admissible in evidence.

5. SALES—*Brokers—Bought and Sold Notes.*—When a broker is employed to buy and sell goods, he is accustomed to give to the buyer a note of the sale, commonly called a "sale note," and to the seller a like note, commonly called a "bought note," in his own name, as agent of each, and thereby they are respectively bound, if he has not exceeded his authority.

6. SALES—*Action for Breach of Contract—Variance.*—In an action for breach of contract of sale by seller the declaration alleged that the wool, the subject of the sale, was to be paid for f. o. b. the shipping station, while the sales note proven required this payment to be made upon presentation of the bill of lading to plaintiff.

   *Held:* That this was not a material variance, although it would probably have been good practice to have amended the declaration, as the declaration was sufficiently broad to embrace the proof tendered, especially as the defendant could not have been prejudiced by the introduction of the sales note, because he accepted the identical terms thereof by telegram.

7. SALES—*F. O. B.*—Before the seller can demand payment under an f. o. b. contract he must not only place the goods free on board cars, but they must be ready to go forward at once, and, if he instructs the carrier to hold them until he can hear from his draft, that is not a delivery f. o. b.

8. SALES—*Instructions—Breach of Contract by Seller—Actions of Seller's Agent.*—In an action by buyer for breach of contract of sale, the court instructed the jury that the failure on the part of defendant's agent to furnish defendant money to finance the deal could not in any way affect the right of plaintiff to recover, who at no time agreed to furnish funds to finance the defendant, and who, so far as the record showed, knew nothing of the arrangement between defendant and his agent to finance defendant.

   *Held:* No error.

9. SALES—*Instructions—Peremptory Instruction—Modification by Other Instruction.*—In an action for breach of contract of sale, an instruction which told the jury what the contract of sale was, and that it was as contended for by the plaintiff, if erroneous as a peremptory instruction, was cured by giving another instruction for defendant which expressly modified plaintiff's instruction and left the questions of what the contract was and who broke it to the jury.

10. SALES—*Instructions—Agency.*—An instruction for defendant, in an action by plaintiff for breach of contract of sale, submitting to the jury the question of whether defendant's agents exceeded their authority in making the contract, removes an objection to an instruction for plaintiff that it should have been predicated upon the ground that neither of defendant's agents exceeded their authority.

Opinion.

11. AGENCY—*Ratification—Acceptance of Benefits—Instructions.*—In an
     action by buyer for breach of contract of sale, the court instructed
     the jury that if they believed that defendant used any part of the
     fund of defendant's agent to purchase the wool, which was the sub-
     ject of the sale, after having notice that payment by plaintiff was
     to be by sight draft with bill of lading attached, this constituted a
     ratification of the sales contract made between plaintiff's and de-
   • fendant's agent.
     *Held:* No error.
12. SALES—*Agency—Breach of Contract by Sel'er—Instructions—Case at
     Bar.*—In the instant case, an action for breach of contract of sale by
     seller, an instruction that plaintiff's agent's authority to bind plain-
     tiff extended only to examining and receiving the subject of the
     sale, based upon the uncontradicted evidence in the case upon the
     question, was unobjectionable.
13. SALES—*Agency—Instructions—Unsupported by Evidence.*—In an action
     for breach of contract of a sale of wool by seller, an instruction that
     one P. was agent for plaintiff to pay for the wool was properly re-
     fused, where the uncontradicted evidence was that in paying the
     price of the wool to defendant P. was the agent of a commission
     company, which negotiated the sale between plaintiff and defend-
     ant.

Error to a judgment of the Circuit Court of Grayson
county, in an action of assumpsit.    Judgment for
plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. G. Kegley* and *Rhudy & Sutherland,* for the plain-
tiff in error.

*S. F. Landreth* and *S. B. Campbell,* for the defend-
ants in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action by W. R. Grace & Co., wool dealer
of New York city, hereafter referred to as plaintiff,

against T. R. Fulton, of Grayson county, Va., here-
after referred to as defendant, for damages in the sum
of $15,000 for breach of contract for alleged failure on
the part of the defendant to deliver to plaintiff 175,000
pounds of wool, at the price of 36½ cents a pound.

The case was tried on June 7, 1924, in the Circuit
Court of Grayson county, and the jury found a verdict
of $2,000 in favor of the plaintiff. The defendant moved
the court to set aside the verdict "as contrary to the
law and the evidence, and for misdirection of the jury
as to the law." The court overruled the motion and
rendered judgment for the plaintiff.

There are four counts in the declaration—the com-
mon count (trespass on the case in assumpsit) and
three special counts, which undertake to give the
terms of the contract and charge its breach on the
part of the defendant. The third count of the declara-
tion, which states the plaintiff's case as broadly as it is
anywhere stated, alleges:

"Then said plaintiff at the special instances and re-
quests of the said defendant, through the said defend-
ant's duly authorized agent, the Kerns Commission
Company, of Jersey City, N. J., bargained with said
defendant to buy of the said defendant, and the said
defendant then and there, through its duly constituted
agent, the Kerns Commission Company, sold to the
said plaintiff a large quantity of goods, to-wit: 175,000
pounds of wool at the price of 36½ cents for each and
every pound thereof to be delivered by the said defend-
ant to the said plaintiff f. o. b. stations, Troutdale,
Speedwell, Fries and Galax, Va., by July 15, 1922,
and to be paid for by the said plaintiff to the said
defendant on the delivery thereof as aforesaid, and in
consideration thereof that the said plaintiff at the like
special instance and request of the said defendant had

·then and there undertaken and faithfully promised the said defendant to accept and receive the said goods, and to pay him for the same at the rate of the price aforesaid, he the said defendant undertook and then and there faithfully promised the said plaintiff to deliver the said wool to the said plaintiff aforesaid, and the said time for delivery of the said goods aforesaid hath long since elapsed, and the said plaintiff hath always been ready and willing to accept and receive the said goods and to pay for the same at the rate and price aforesaid, whereof the said defendant hath always had notice, etc."

The defendant filed the following grounds of defense:

"That the plaintiff failed and refused to comply with the terms of the contract sued on, in that they refused and failed to pay defendant the price for which the wool was sold. And said defendant was at all times ready and willing to comply with his part of contract had the plaintiff complied with same."

There are five errors assigned:

(1)    The court erred in admitting in evidence the testimony of Louis C. Miller in regard to contract between plaintiff and defendant, and exhibit No. 1 filed therewith.

(2)    The court erred in overruling the defendant's motion to exclude the evidence of Louis C. Miller and exhibit No. 1 filed therewith, as set forth in assignment No. 1 above.

(3)    The court erred in giving to the jury plaintiff's instructions Nos. 1, 2, 3 and 4, and each of them.

(4)    The court erred in refusing to give to the jury defendant's instruction No. 4.

(5)    The court erred in overruling defendant's motion to set aside the verdict of the jury on the ground that same was contrary to the law and evidence and

for misdirection of the jury as to the law, and upon entering judgment for the plaintiff.

As we view the case it is not necessary to discuss these in the order in which they are alleged, for the following reasons:

The primary controversy in the case is as to the terms and conditions of the contract. If the trial court made no error in the admission of evidence, and if the jury was properly instructed, then the jury, by its verdict, has established not only what the contract was, but also who breached it. Furthermore, there is no doubt about the fact that the evidence, if properly admitted, fully supports the finding of the jury.

The case, therefore, can be discussed under three heads—

1. What was the contract, as established by the evidence and the jury's verdict?

2. Did the court err in admitting evidence which, if it had been excluded, may have resulted in a different verdict? (This involves grounds of error 1 and 2, *supra.*)

3. Did the court properly instruct the jury? (Grounds of error 3 and 4, *supra.*)

1. The terms of contract are shown chiefly by correspondence by letters and by telegrams between Kerns Commission Company and the defendant. The preliminary arrangements whereby this company was to undertake to sell to some wool merchant all the wool the defendant could buy in his section of Virginia in 1922 were made in Washington in March of that year, when the defendant met E. L. Kerns, head of the Kerns Commission Company, there. It is unnecessary to go into the details of this preliminary correspondence further than to say that from the beginning it appears that the defendant was unable personally to finance the

purchase of the wool, that the Kerns Company proposed to find a purchaser at a price satisfactory to defendant, that it was to finance the transaction so far as payment to the woolgrowers was concerned; that it was to receive a commission of two cents per pound for all wool so sold. The substance of this preliminary understanding appears in the first letter written by E. L. Kerns to the defendant, March 16, 1922, in which, in restating the writer's views of the conversation had with defendant shortly before in Washington, he says:

"I told you that we would pay for the wool at costs when loaded, with the bill of lading attached to the draft drawn against each shipment, which we were entirely willing to do. You may draw your drafts on Kerns Commission Company at the Jersey City Stock Yards, and make them payable through the Commercial Trust Company, Grove Street Branch, Jersey City, N. J. I think if you show this letter to your banker, he will understand thoroughly what this means."

Shortly after this the commission company got in touch with the plaintiff, and its representative, Alexander H. Cain, came to Virginia to see defendant and to purchase his wool if a satisfactory price could be agreed upon. No agreement was made at that time because no satisfactory price was offered, but later the commission company, through Louis C. Miller, a wool broker of Verona, New Jersey, secured an offer by the plaintiff to the defendant of thirty-six and one half cents per pound for all the wool the latter could furnish. The defendant accepted this offer, and upon information furnished Miller by the Kerns Commission Company, the latter filed with W. R. Grace & Co., the plaintiff, a "sales note" as follows:

"Sold to W. R. Grace & Co., New York City.

"Account of T. R. Fulton, Carsonville, Va., through
E. L. Kerns, Jersey City, N. J.

"Quantity, 150,000 lbs. to 175,000 lbs.

"Description: Virginia wool. About 75,000 lbs.
being old wool and about 75,000 to 100,000 lbs. new
wool—this year's clip.

"Price 36½ cts. per pound for merchantable wool,
rejects not to exceed 5 per cent.

"Terms net f. o. b. cars.

"Tare 3 lbs. per bag.

"Sacks (bags) to be furnished by buyers, W. R.
Grace & Co.

"Ship in car load lots as loaded.

"Remarks. Payments to be made to E. L. Kerns
on presentation of invoices and bills of lading at
buyer's office in New York.

"Shipments to be made between May 15 and
July 15, 1922.

"Buyers to make prompt initial shipments of empty
bags as per sellers telegraphic request of May 2,
1922, to E. L. Kerns as follows—Troutdale, Va.,
100 bags; Fries, Va., 100 bags; Speedwell, Va., 100
bags, and Galax, Va., 150 bags.

"LOUIS C. MILLE, BROKER."

On May 14, the Kerns Commission Company wrote
the following letter to the defendant:

"*May 14, 1922.*

"T. R. FULTON,
        *Carsonville, Va.*

"We will telegraph First National Bank, Galax, Va.,
$6,000 Monday to take care of first shipment, subject
to check by George Poppelwell for wool, at contract

price to you.  Each car to be billed care of Kerns Commission Company.  Ownership to rest with us, and bills of lading mailed Kerns Commission Company the date cars are shipped.  Will look after your interest here and collect for wool at sale price.  Poppelwell will reach Fries Tuesday.  Will have to have your answer by noon Monday to comply with this plan. Will follow same plan with other cars to follow.  Rush answer.

"KERNS COMMISSION CO."

On the following day the Commission Company alleges that it received, and it produced in evidence, a telegram as follows:

"May 15, '22.

"CARSONVILLE, VA.
        "*Kerns Com. Co. Sy.*
    "Message received.  Plans suggested accepted and will be followed.  Send man without fail.

"T. R. FULTON."

It is true that defendant undertook to deny that he ever sent this telegram, but at best his testimony was that he did not remember sending it, and the verdict of the jury, instructed directly to find for the defendant if they did not believe this telegram was sent, determined this question against the defendant.

So that the contract as established is as set out in the sales note, the letter of May 14, above quoted, and the telegram just above quoted.

[1]  Under these circumstances, it is perfectly clear that plaintiffs (Grace & Co.) had nothing to do with the side arrangements between the Kerns Commission.

Company and the defendant. It is also clear from the foregoing and from all the evidence in the case that plaintiff, Grace & Co., knew nothing of any contract for financing or paying defendant for wool except that set out in the sales note, and were to pay nothing until the wool was loaded on the cars, and then only upon presentation of the bills of lading by Kerns & Co. to the plaintiff; that Kerns Commission Company were to reimburse themselves for advances in financing the transaction, and pay to themselves their commission of two cents a pound for all wool sold, and pay the defendant the balance. Kerns Commission Company obligated themselves to advance sufficient funds to pay the contract price of the wool to the defendant.

The plaintiff sent its representative, George Poppelwell, to Virginia to take up the wool and inspect it, and Kerns Commission Company authorized Poppelwell, for them, by letter, to check on the funds, $6,000, referred to in this letter, and placed in bank by them to pay the growers for their wool.

The price of wool began to advance about this time, and went up to about forty-five cents a pound. After a considerable sum of money had been paid out by Poppelwell and a considerable amount of wool had been packed into plaintiff's sacks, defendant demanded payment in full for his wool, when loaded on the cars at the several stations to which sacks had been shipped, and claimed that the terms of his contract with Grace & Co. required this. Poppelwell, for Kerns & Co., declined to pay more than the contract price to the growers. Defendant then, claiming that Poppelwell declined to pay him more than thirty cents a pound for his wool, refused to deliver any wool at all. Poppelwell states that even before the defendant had made this claim, he had sold some of the wool to another dealer, and had delivered it in plaintiff's sacks.

The jury not only found the terms of the contract were as testified to by the witnesses for the plaintiff and as shown by the documentary evidence introduced by it, but they very properly found that the defendant breached this contract.

[2, 3] (2) The documentary evidence in the case shows clearly that the Kerns Commission Company was acting as agent for T. R. Fulton in the sale of his wool. The trial court was right in so holding as a matter of law. The construction of written documents is exclusively for the court. *N. & W. Ry. Co.* v. *Mundy*, 110 Va. 42, 66 S. E. 61; *Washington, etc., R. Co.* v. *Lacey*, 94 Va. 460, 26 S. E. 834; *New River Min. Co.* v. *Painter*, 100 Va. 507, 42 S. E. 300.

[4, 5] It may be admitted that Kerns Commission Company did not have authority to close a contract for the purchase of the wool, but after the failure of plaintiff's representative to agree with defendant on a price, Kerns Commission Company engaged Lewis C. Miller, whose testimony is objected to, and who made the sales note, filed as exhibit with his testimony and set out above, also objected to, to undertake to secure a bid acceptable to defendant, and this Miller did. All this was within the scope of Kerns Commission Company's authority, their agency having been fully established by the evidence, and this very offer, substantially as set out in Miller's sales notes, was submitted to the defendant by Kerns Commission Company by their letter, and accepted by him by telegram of May 15th.

In *Davis* v. *Gordon*, 87 Va. 567, 13 S. E. 38, the court said: "When he (the broker) is employed to buy and sell goods, he is accustomed to give to the buyer a note of the sale, commonly called a "sale note," and to the seller a like note commonly called a "bought note," in his own name as agent of each and thereby

they are respectively bound if he has not exceeded his authority."

Miller delivered a sales note to plaintiff and a bought note to Kerns Commission Company, agent for defendant, and the letter of May 14th and the telegram of May 15th followed. The testimony of Miller and the sales note, therefore, were admissible in evidence and there was no error in admitting them.

[6, 7] It is suggested that the evidence of Miller, including the exhibit (the sales note) and the other documentary evidence of the contract, should have been excluded because there was an alleged variance between the contract declared on and the contract as established by the plaintiff's evidence, especially the sales note.

The third count, as set out above, as well as the fourth count of the declaration, alleges that the contract was entered into with the defendant's duly authorized *agent*, the Kerns Commission Company. The only variance possible is as to the method of payment. The most that can be claimed is that the contract proven goes further than the contract declared upon, in specifying the particular method by which payment was to be made. The declaration alleges that the wool was to be paid for f. o. b. the shipping station, while the contract proven required this payment to be made upon presentation of the bill of lading to plaintiff.

There is no question as to the meaning of the term f. o. b. In *Aspegren* v. *Wallerstein*, 111 Va. 570, 69 S. E. 957, it is expressly decided that before the seller can demand payment under an f. o. b. contract he must not only place the goods free on board cars, but they must be ready to go forward at once, and if he instructs the carrier to hold them until he can hear from his draft that this is not a delivery f. o. b. *Lawson* v.

*Hobbs*, 120 Va. 690, 91 S. E. 750, affirms the *Waller-stein Case.*

The trial court evidently did not consider this a material variance, nor did counsel for the plaintiff, as no motion was made to amend the declaration. It would probably have been good practice to have amended (See Burks' Pl. & Pr., p. 586, *et seq.*), but the declaration is sufficiently broad in this case to embrace the proof tendered, especially as the defendant could not have been prejudiced by the introduction of the sales note, because he accepted the identical terms thereof by telegram, nor was he taken by surprise, because the deposition in which the sales note was introduced in evidence was taken in September, 1923, and the case was not tried until June, 1924. In addition, upon the contract proved, and the circumstances of its breach, it is difficult to see how the jury could have reached any other verdict than the one they found. If the instructions are not erroneous, the parties have had one fair trial. *Va. Ry. & P. Co.* v. *Smith*, 129 Va. 269, 105 S. E. 532.

(3) The court gave the following instructions at the request of the plaintiff, all of which were objected to and exceptions taken:

"The court instructs the jury that the failure on the part of Kerns Commission Company or of E. L. Kerns to furnish T. R. Fulton money, if the jury believes there was such failure, cannot in any way affect the right of W. R. Grace & Co. to recover in this case, and has nothing to do with the case.

"No. 2. The court instructs the jury that the defendant, T. R. Fulton, entered into a valid contract with the plaintiff, W. R. Grace & Co., for the sale of not less than 75,000 pounds of wool and as much more as the jury believes he had for the season of 1922,

at the price of thirty six and one half cents a pound delivered free on board railway cars and ready to go forward at Galax, Virginia, Fries, Troutdale and Speedwell; that not until T. R. Fulton had actually packed the wool on board the cars could he demand the purchase price, or any part thereof, from W. R. Grace & Co., and then only for payment to E. L. Kerns, upon presentation of bills of lading at the office of W. R. Grace & Co., in New York; hence if the jury believe that T. R. Fulton failed so to place the wool on the railway cars ready to go forward, he *broke* his *contract* with Grace & Co. and is liable to them for the difference, if any, between thirty-six and one half cents. per pound and the market price of wool sold f. o. b. cars at Galax, Troutdale, Fries and Speedwell.

"No. 3. The court instructs the jury that if they believe from the evidence that T. R. Fulton used the $6,000.00 or any part thereof, which was placed in the bank by Kerns, for the purchase price of wool, after having notice that the payment was to be by sight draft with bill of lading attached, that this constituted a ratification of the sale contract.

"No. 4. The court instructs the jury that Poppelwell's authority to bind from Grace & Co. only extended to examining and receiving wool, and even though the jury may believe from the evidence that Poppelwell did refuse to pay in excess of thirty cents. per pound for wool when loaded on cars, this was. not binding on Grace & Co., and would not be a breach of the contract on the part of Grace & Co."

The following instructions were given at the request of the defendant:

"No. 1. The court instructs the jury that the burden is on the plaintiff, W. R. Grace & Co., to prove its case by a preponderance of the evidence.

"No. 2. The court instructs the jury that if you believe from the evidence that the telegram of May 15, 1922, was not sent to Kerns Commission Company by the defendant, T. R. Fulton, then the contract is not as set forth in plaintiff's instruction No. 2, and the terms of payment would then be thirty-six and one half cents f. o. b. Fulton's shipping points, and if you further believe from the evidence that the said plaintiff failed or refused to comply with the above terms, then you will find for the defendant, unless you further believe from the evidence that the defendant otherwise ratified said contract.

"No. 3. The court instructs the jury that if you believe from the evidence that Kerns Commission Company, or Lewis Miller, exceeded the authority given them by T. R. Fulton in making a contract with the plaintiff, then the defendant is not bound thereby unless he subsequently in some way ratified same."

The following instruction, offered by the defendant, was refused by the court, and exception to the action of the court duly taken:

"The court instructs the jury that if you believe from the evidence that the plaintiff, W. R. Grace & Co., or its agent, told the defendant, T. R. Fulton, that it, the said plaintiff, would not pay him the contract price for his wool, thirty six and one half cents per pound, when it was loaded on the cars at Fulton's shipping point, as per contract, then there was no duty resting upon said defendant to place said wool on cars, and further there was no duty resting upon him, the said defendant, to deliver said wool at all, and you will find for the defendant. Provided, you further believe from the evidence that Poppelwell was the agent for said plaintiff to take up, inspect, and pay for said wool."

[8] The exception to instruction No. 1 has no merit.

The plaintiff at no time agreed to furnish funds to finance the defendant in the purchase of wool, and so far as the record shows they knew nothing of the arrangement Kerns Commission Company made to finance defendant. Their rights were in no wise dependent upon whether Kerns Commission Company carried out its arrangement with defendant. The instruction was properly given to clarify this matter in the minds of the jury.

[9] Instruction No. 2, for plaintiff, is objected to on the ground that it is, in effect, a peremptory instruction, in that it tells the jury what the contract is, and that it is as contended for by the plaintiff. It is not necessary to decide whether the court exceeded its authority under the evidence in this case so far as this instruction is concerned, or whether a peremptory instruction of this character is violative of the statute prohibiting peremptory instructions, because if the instruction had been erroneous for the reasons stated, whatever error there was in this regard was cured by the giving of defendant's instruction No. 2, which expressly modifies plaintiff's instruction No. 2, and the question of what the contract was and who broke it was, by these two instructions, read together, left to the jury. The instruction complained of might have been better expressed, but when the two instructions are read together, as they must be, because they are specifically linked together, there was nothing to mislead the jury.

[10] Instruction No. 3 for defendant, in which the question of whether Kerns Commission Company, or Lewis C. Miller, exceeded their authority, as agents of defendant, was left to the jury removes any further objection which could be made to the instruction under consideration, especially upon the ground that the instruction should have been predicated upon the ground that neither Kerns nor Miller exceeded their authority.

[11] There is no valid objection to instruction No. 3 given for the plaintiff.

One cannot avail himself of the benefits of a transaction without assuming its burdens. If Fulton accepted the $6,000 placed in bank by Kerns Commission Company, to finance his purchases of wool, or any part of it, after he knew the terms of the contract (and there was evidence to support this contention), even if he had not previously agreed to them, his conduct amounted to a ratification of it and he is bound by its terms.

[12] There is no objection to instruction No. 4 given for the plaintiff. It is based upon the uncontradicted evidence in the case upon this question.

[13] Instruction No. 4, offered by the defendant, was properly refused. It is sufficient to point out that there is no evidence to support the proviso in the instruction that Poppelwell was agent for the plaintiff to pay for the wool. The evidence is uncontradicted that in paying the price of wool to defendant, he was agent for Kerns Commission Company.

There being ample evidence to support the verdict of the jury, no harmful error in the admission of evidence, no material variance between the contract declared on and the contract proven, at least of sufficient materiality to justify a reversal of this case in view of the result reached upon the merits, and no harmful error in the granting or refusal of instructions, we are of opinion to affirm the judgment of the circuit court.

*Affirmed.*