# Richmond.

## J. W. CHANDLER v. H. E. KELLEY.

January 19, 1928.

Absent, Burks and Campbell, JJ.

1. SALES—*Agency—Action by Seller—Question at Issue Whether Buyer was Agent of Defendant—Evidence Sufficient to Establish Agency—Case at Bar.*—In the instant case, an action by the seller of potatoes against defendant for the price of the potatoes sold, the issue was whether the buyer was acting as agent for defendant or whether he was acting in his own behalf.   Both buyer and defendant testified that the buyer was not the agent of the defendant.   But the defendant and buyer admitted that defendant's brand covers were distributed to persons from whom the buyer purchased potatoes, and that these potatoes were turned over to defendant or shipped at his direction while the buyer received no part of the profits from the potatoes and no percentage on sales made on consignment.   On the contrary he received a straight brokerage for all potatoes he purchased or shipped on defendant's account.   Moreover before making any purchases the buyer would call the defendant upon the phone as to the potato market and when he received information from the defendant as to the price he would purchase.

    *Held:*   That these undisputed facts and admissions taken in conjunction with all the other evidence in the case established a relationship between the buyer and the defendant which was inconsistent with that of seller and purchaser, but which was consistent with the relationship of principal and agent.

2. SALES—*Action by Seller—Evidence to Show Buyer was Agent of Defendant—Evidence—Defendant Cannot Occupy a More Favorable Position than that Made Out by his Own Testimony—Case at Bar.*—In an action by the seller of potatoes against defendant for the purchase price, where the question at issue was whether the buyer of the potatoes was defendant's agent, the defendant cannot occupy a more favorable position on the trial of the case than he made out by his own testimony, and the admissions in the instant case of the defendant and the buyer clearly showed that the relationship between them was that of principal and agent.   They speak of the compensation of the

agent as brokerage; the agent allowed his principal to ascertain what he should pay for the potatoes; he represented his principal in loading and billing, and his instructions for billing came from his principal. He forwarded the bills of lading to his principal and was paid a straight brokerage. Thus it clearly appeared that the buyer was the agent of defendant.

3. Words and Phrases—*Commission—Discount.*—The word commission is an apt phrase used in connection with agency or brokerage, but it is inconsistent with the notion of a direct sale. Commission is not used in a proper sense as to goods sold directly to a consignee. Discount is the natural word to use in such connection, while commission correctly describes that which an agent received on sales.

4. Agency—*Denial of Agency by Alleged Principal and Agent—Case at Bar.*—In the instant case, an action by the seller of potatoes against defendant, the issue was whether the buyer of the potatoes was the agent of defendant. Both defendant and the buyer denied the alleged agency.

   *Held:* That the relationship of the parties did not depend upon what the parties themselves called it, but rather in law what it actually was.

5. Agency—*Intention of the Parties—Existence of Agency a Question of Law.*—The intention of the parties must control on the question of whether or not an agency exists; that intention is gathered from what was actually done or agreed by the parties, not from what they may have privately meant or supposed they meant. Agency or not is a question of law, to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency, whether the parties understood it to be or not. Their private intention will not affect it.

6. Sales—*Agency—Whether Buyer was Agent of Defendant in Action against Defendant for Purchase Price—Sale or Consignment—Payment of Purchase Price by Principal to his Agent—Case at Bar.*—In the instant case, an action by the seller of potatoes for the purchase price, the question at issue was whether or not the buyer was defendant's agent.

   *Held:* That if the buyer of the potatoes was acting as the agent of defendant, it was not material whether the potatoes were turned over to the defendant as a purchase or to sell on commission. In either event, if the buyer was defendant's agent, the defendant would owe the seller, the plaintiff, for the potatoes and he could not discharge this obligation by paying the purchase price to the buyer, his agent.

7. Appeal and Error—*Point Raised for the First Time on Appeal—Action by Seller for Purchase Price of Potatoes—Case at Bar.*—In the instant.

case, an action by the seller of potatoes against defendant for the purchase price, it was contended that if the agreement was that the potatoes were to be consigned to defendant to sell on commission, there could be no recovery because the pleadings in the case were based upon the sale of the potatoes and not upon a consignment.

*Held:* That the answer to this contention was that the point was made for the first time on appeal. If it had been raised in the trial court the plaintiff could and would have amended his notice of motion by adding a count thereto to meet such an objection.

8. APPEAL AND ERROR—*Amendment—Point Raised for the First Time on Appeal—Section 6250 of the Code of 1919.*—Section 6250 of the Code of 1919 authorizes amendments upon terms fair to both parties, whenever a variance between the pleadings and the proof develops during the trial. This statute has always been regarded with favor, and construed with liberality by the courts. Having failed to avail himself of the remedy thus provided, or to give the opposite party or the court the opportunity to invoke it, a party cannot take advantage of an irregularity which the statute would have cured.

Error to a judgment of the Circuit Court of North-ampton county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. Brooks Mapp*, for the plaintiff in error.

*B. Drummond Ayres*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

H. E. Kelley, who was plaintiff in the lower court and is hereinafter referred to as plaintiff, in July 1925, instituted proceedings by notice of motion in the Circuit Court of Northampton county against J. W. Chandler, hereinafter referred to as defendant, for judgment in the sum of $579.30; $469.30 of this amount was alleged to be due the plaintiff for potatoes sold and

delivered by him to the defendant's alleged agent, George Feddeman, and $110.00 was alleged to be due for brokerage on eleven cars of produce handled by the plaintiff for the defendant.

The jury found a verdict for the defendant which the court set aside, and entered up final judgment for the plaintiff in the sum of $469.30, the amount claimed for the potatoes delivered to the defendant, with interest from the 1st day of August, 1922. From this judgment a writ of error was duly awarded the defendant.

The only assignment of error here is that the judgment of the court in setting aside the verdict of the jury and entering judgment for the plaintiff is contrary to the law and the evidence, and the issue before the jury and the issue here is whether George Feddeman was acting as agent for J. W. Chandler or whether he was acting in his own behalf. The trial court took the position that the evidence introduced in the case established that Feddeman was the agent of Chandler, the defendant, as a matter of law.

The facts with reference to this question deduced from the evidence, fairly stated, are as follows: About the year 1920 George Feddeman opened an office in Pocomoke, Md., on the window of which he had painted the names of Chandler and Feddeman, Produce Brokers, dealing in fertilizer and seed. Chandler is a commission merchant having his main office at Exmore, Virginia. The record is clear that Feddeman generally represented himself to be the agent of the defendant, and he handled seed and fertilizer which were furnished him by Chandler. The defendant was the agent for the American Fertilizer Company which made the American Brand Fertilizer. He testified that he sold this fertilizer to Feddeman who in turn resold it to the

farmers.   The defendant shipped potatoes under what
is known as "Eagle Brand" and this trade-mark (though
it was never patented by Chandler) was stamped
on the covers which were placed on the barrels of
potatoes shipped by him.   These covers were supplied
to Feddeman from the time he went in business at
Pocomoke.   He solicited potatoes from the farmers
telling them that he was buying them for the defendant,
and the Eagle Brand covers, above referred to, were
left with the sellers to be placed on the barrels when
the potatoes were shipped.   The potatoes were billed
in the name of J. W. Chandler, sometimes by Feddeman ·
and sometimes by the shippers under Feddeman's
direction according to directions furnished him by the
defendant, and the bills of lading were mailed to the
defendant at Exmore.   On numbers of occasions bills
of lading were handed to the plaintiff to be mailed
by him to the defendant.

In 1922, according to the testimony of plaintiff, he
was approached by Feddeman and an agreement was
entered into between them that he was to buy potatoes
for the defendant for a brokerage of $10.00 per car.
Feddeman was to furnish Kelley, the plaintiff, with
"Eagle Brand" covers at New Church, the plaintiff's
shipping point, and the covers were actually shipped to
the plaintiff, presumably by the defendant.   There is
no dispute about the fact that the plaintiff handled
eleven cars of produce, including seed and potatoes.
He sold the defendant these shipments, including three
cars of potatoes which the plaintiff bought, and three
cars of his own, all of which the plaintiff loaded; three
cars which he supervised the loading of for the defend-
ant and Feddeman, and two cars of seed potatoes
which he supervised the unloading of for them.

On July 25, 1922, plaintiff had two cars loaded with

Chandler's Eagle Brand covers on them, one car containing 204 barrels and the other forty-three barrels. These the plaintiff said were sold to Chandler through Feddeman over the phone. Feddeman let the potatoes remain on the siding a few days and without further conversation with the plaintiff billed them by phone in the defendant's name and told the agent to give the bills of lading to the plaintiff, which he did, and the plaintiff sent them to Chandler, the defendant. For these potatoes the plaintiff has never been paid.

The defendant sent Feddeman a check in payment for them, but Feddeman did not make settlement with the plaintiff. The plaintiff testified that he approached Feddeman for payment and was told that the defendant's wife was in the hospital and as soon as she could leave he would get the money from Chandler. There is a conflict in the evidence between the plaintiff and defendant as to whether the latter ever promised to pay the former for the potatoes, the plaintiff contending that he did, the defendant contending that he did not. There is also a conflict in the evidence between the plaintiff and Feddeman as to whether the potatoes for which the plaintiff has not been paid were sold to Feddeman on consignment or whether they were sold outright at $2.00 per barrel to Chandler through Feddeman as claimed by the plaintiff.

After some correspondence and a personal visit by the plaintiff to the defendant, which finally resulted in the refusal on the part of the defendant to settle with the plaintiff, this notice of motion was instituted.

The notice of motion alleges that George Feddeman was acting as agent for the defendant in the purchase of the potatoes and that pursuant to a contract between the alleged agent and the plaintiff the latter sold Feddeman, as agent, the potatoes in question.

A second count in the notice of motion sets out the alleged agreement on the part of George Feddeman to pay to the plaintiff $10.00 a car brokerage on all potatoes purchased by him for Chandler.

The court did not enter judgment on this second count for $10.00 a car brokerage, but did find for the plaintiff under the first count at the rate of $1.90 per barrel (which seems to have been the market price at the time, and the amount claimed in the notice of motion) for the potatoes, in the total sum of $469.30.

[1] The defendant testified that Feddeman was not his agent but that he was acting entirely independently of him; that he purchased the potatoes in question on his (Feddeman's) own account and sold or consigned them to defendant, and Feddeman's testimony was practically to the same effect. But these statements on the part of the defendant and Feddeman are their own conclusions with reference to the alleged agency and it does not necessarily follow that these conclusions are legally accurate, and the facts gathered from the evidence, as above narrated, are not conclusive of the question. There are certain undisputed facts with reference to this question of alleged agency, however, and admissions on the part of Chandler and Feddeman, which determine, we think, as a matter of law, that Feddeman was the defendant's agent in the purchase of the potatoes. This is the conclusion reached by the trial court and this is the conclusion which moved the court to set aside the verdict of the jury and enter judgment for the plaintiff.

These undisputed facts and admissions taken in conjunction with all the evidence in the case, we think, establish a relationship between the defendant and Feddeman which is inconsistent with that of seller and purchaser, but which is consistent with the relationship of principal and agent.

Thus Chandler and Feddeman admit that Chandler's Eagle Brand covers were distributed to persons from whom Feddeman purchased potatoes, and these potatoes were turned over to Chandler or shipped at his direction while Feddeman received no part of the profits from the potatoes and no percentage on sales made on consignment. On the contrary he received a straight brokerage of $15.00 per carload for all potatoes he purchased or shipped on Chandler's account. Moreover before making any purchases Feddeman would call the defendant upon the phone as to the potato market and when he received information from the defendant as to the price he would purchase.

This is clearly shown by the testimony of Feddeman to the following effect:

"Q. Mr. Feddeman, you have no idea what Mr. Chandler made on these potatoes?

"A. No, sir.

"Q. You got fifteen dollars a car regardless of what Mr. Chandler got on the potatoes that you bought outright?

"A. Yes, sir.

"Q. You then would call Mr. Chandler up and ask how you should buy these potatoes?

"A. No; I would call Mr. Chandler up as to the potato market.

"Q. What then?

"A. As to what his ideas were as to the price that I could pay for the potatoes.

"Q. I see. He would tell you the price that you could pay?

"A. He would tell me about the market price.

"Q. I see. Then, if you bought you would turn them over to him?

"A. Yes.

"Q. And he paid you $15.00 for buying?"

These same admissions on the part of Feddeman appear in numerous places throughout his testimony, for instance in response to questions at another stage of his examination he said:

"Q. Did you and Mr. Chandler handle any potatoes on joint account?

"A. No, sir.

"Q. Always straight brokerage?

"A. Always straight brokerage.

\*        \*        \*        \*        \*        \*        \*        \*

"A. I would give the farmer so much per barrel for the potatoes.

"Q. When would you give it to him?

"A. When the potatoes—after they were loaded. No exact specified time; it would probably be weeks before I would pay them then I would call Mr. Chandler to handle these potatoes for me.  · Then Mr. Chandler would give me billings on these potatoes.

"Q. What do you mean by billings?

"A. Where they were to be shipped and to whom.

"Q. And what did you do then?

"A. I would bill the potatoes as per his instructions.

"Q. And how did you get paid for it?

"A. Why, fifteen dollars per car—on the brokerage that he would pay me."

The defendant (Chandler) also testified on numerous occasions to the same effect.   In response to questions he said:

"Q. Does the amount of the two cars which were handled on a sale represent the amount which you agreed to pay Mr. Feddeman?

"A. Yes, sir.

"Q. Did you have any further settlement with Mr. Feddeman?

"A. The only further settlement was the brokerage.

"Q. You paid him a brokerage?

"A. Yes, sir.

"Q. How much was that brokerage—$10.00 or $15.00 per car?

"A. Yes, sir.   For every car that I bought from him.

"Q. You knew he was buying those cars from other parties?

"A. I supposed so."

With reference to the shipment of the potatoes Feddeman was asked:

"Q. How did you bill these potatoes?

"A. I billed them through his instructions.

"Q. Were the bills of lading sent to him?

"A. Yes.

"Q. Did you do the billing or did the shippers do the billing usually?

"A. Both.

"Q. Sometimes one and sometimes the other.   Were they billed in your name or in Mr. Chandler's name?

"A. They were billed in Mr. Chandler's name.

"Q. All potatoes were billed by Mr. Chandler as being shipped by Mr. Chandler?

"A. Yes, sir.

"Q. And these bills of lading were sent to. Mr. Chandler either by you or by the shippers?

"A. Yes, sir."

[2] The defendant cannot occupy a more favorable position on the trial of a case than he has made out by his own testimony, and the admissions of the defendant here, and of Feddeman, clearly show that the relationship between them was that of principal and agent.   They speak of compensation of the agent as brokerage; the agent allowed his principal to ascertain what he should pay for potatoes; he represented his

principal in loading and billing them; his instructions for billing them came from his principal, and he forwarded the bills of lading to his principal and he was paid a straight $15.00 brokerage per car for his services in a separate account, while the defendant sent a check for the potatoes direct to Feddeman.

[3] It is clear that the parties themselves admitted that Feddeman's sole interest in the transaction was his $15.00 per car brokerage.

In *Avondale Mills* v. *Benchley Bros., Inc.*, 244 Mass. 153, 158, 138 N. E. 586, at page 588, the court said: "Certain details are added, of which the commission of five per cent to be allowed to the defendant is most notable. This is an apt phrase to use in connection with agency or brokerage. It is inconsistent with the notion of a direct sale. 'Commission is not used in a proper sense as to goods sold directly to a consignee. Discount is the natural word to use in such connection, while commission correctly describes that which an agent received on sales.' "

[4] It is true that the defendant and Feddeman both denied the agency, but the relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually is. Thus in 2 C. J. 423, we find: "But if the facts establish the relation of principal and agent *as a matter of law*, the intention of the parties is immaterial, and the character of the relation is not affected by any agreement of the parties that an agency between them does not exist or that some other relation does exist."

[5] In *Bradstreet Co.* v. *Gill*, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768, this is said: "The intention of the parties, it is true, must control; but that intention is gathered from what was actually done or agreed by the parties, not from what they *may*

*have privately meant or supposed they meant.* Agency or not is a question of law, to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency, whether the parties understood it to be or not. Their private intention will not affect it."

We think from the foregoing that it is clear the record discloses an actual agency between the defendant and Feddeman.

It is also contended by the plaintiff that the conduct of the defendant in the transaction under review here is such as to establish an ostensible agency or an agency by estoppel, and while this is perhaps true, when all the facts are considered, since we have determined that an actual agency, as a matter of law, is established by the evidence, it is not necessary to pursue this subject further.

[6] The defendant contends that in addition to the issue before the jury as to whether Feddeman was the defendant's agent or not there was another issue before the jury, to wit, whether or not the plaintiff sold to Feddeman the 247 barrels of potatoes in question or turned them over to Feddeman to handle on a commission basis. In view of our conclusions upon the question of agency, it does not appear very material whether the potatoes were turned over to the defendant as a purchase or to sell on commission. In either event, if Feddeman was his agent, the defendant would owe the seller, the plaintiff, for the potatoes and he could not discharge this obligation by paying the purchase price to Feddeman, his agent.

[7] It is contended by the defendant that if the agreement was that the potatoes were to be consigned, no recovery can be had in any event because the

pleadings in the case were based upon the sale of the potatoes and not upon the consignment.

The answer to this is that this point was made in this court for the first time. If it had been raised in the trial court the plaintiff could and would have amended his notice of motion by adding a count thereto to meet such an objection.

[8] In *Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171, the point was made in this court for the first time that the plaintiff could in no event recover on his declaration, as he should have declared specially instead of by the common counts only. In answer to this question Judge Kelly speaking for this court said: "It is urged by the defendant, in the second place, that, as this is an action based upon a wrongful discharge, the plaintiff should have declared specially upon the contract and its breach, whereas his declaration contains only the common counts in assumpsit, and that therefore his action must fail. This point was not made in the lower court and cannot be successfully raised for the first time here.

*        *        *        *        *        *        *        *

[8] "Conceding that the declaration was defective, it was the duty of the defendant, if it intended to rely upon that point, to then and there call the court's attention to it. Section 3384 (now 6250) of the Code of Virginia, authorizing amendments, upon terms fair to both parties, whenever a variance between the pleadings and the proof develops during the trial, was expressly designed to meet just such a situation as would have been presented in the trial court if the question now made before us had been raised there. This statute has always, and most properly, been regarded with favor, and construed with liberality by

the courts of this State; and its terms would have fully met the condition now complained of by the defendant. Having failed to avail itself of the remedy thus provided, or to give the plaintiff or the court the opportunity to invoke it, the defendant cannot now take advantage of the irregularity which the statute would have cured. This conclusion is in accord with the well-settled policy and repeated decisions of this court.''

The plaintiff testified that the sale was an outright sale to Chandler and all the evidence in reference to the consignment of the potatoes was introduced by the defendant. No instructions were asked for by him to prevent the plaintiff's recovery provided the jury believed that Kelley's contract with Feddeman was for a consignment of potatoes.

Under these circumstances the defendant cannot now be heard to complain that the proof was at variance with the notice of motion.

We conclude, therefore, that whether the disposition of the potatoes to the defendant was by sale or consignment, it being established by the evidence, as a matter of law, that Feddeman was the agent of the defendant, the plaintiff is entitled to recover and there was no error on the part of the trial court in setting aside the verdict and entering up judgment for the plaintiff. The judgment will therefore be affirmed.

*Affirmed.*