# Richmond

## Kyran Murphy v. Holiday Inns, Inc.

December 1, 1975.

Record No. 740818.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Franklin W. Nutter (James I. Burkhardt,* on brief), for plaintiff in error.

*Michael W. Moncure, III (M. Wallace Moncure, Jr.; Moncure & Cabell,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

On August 21, 1973, Kyran Murphy (plaintiff) filed a motion for judgment against Holiday Inns, Inc. (defendant), a Tennessee Corporation, seeking damages for personal injuries sustained on August 24, 1971, while she was a guest at a motel in Danville. Plaintiff alleged that "Defendant owned and operated" the motel; that "Defendant, its agents and employees, so carelessly, recklessly, and negligently maintained the premises of the motel that Plaintiff did slip and fall on an area of a walk where water draining from an air conditioner had been allowed to accumulate"; and that as a proximate result of such negligence, plaintiff sustained serious and permanent injuries.

Defendant filed grounds of defense and a motion for summary judgment "on the grounds that it has no relationship with regard to the operator of the premises . . . other than a license agreement permitting the operator of a motel on the same premises to use the name 'Holiday Inns' subject to all the terms and conditions of such license agreement". That agreement, filed as an exhibit with defendant's motion for summary judgment, identifies defendant's licensee as Betsy-Len Motor Corporation (Betsy-Len).

Upon a finding that defendant did not own the premises upon which the accident occurred and that "there exists no principal-agent or master-servant relationship between the defendant corporation and Betsy-Len Motor Hotel Corporation", the trial court entered a final order on April 25, 1974, granting summary judgment in favor of defendant.

Plaintiff's sole assignment of error is that the trial court erred "in holding that no principal-agent or master-servant relationship exists."

On brief, plaintiff argues that the license agreement gives defendant "the authority and control over the Betsy-Len Corporation that establishes a true master/servant relationship." Alternatively, plaintiff argues that "[b]y holding out the operation of the motel as a 'Holiday Inn' motel [defendant] . . . has created the appearance that a master/servant relationship exists, and where a third party so relies, the principal should be estopped to deny the existence of this relationship".

■ We look first to plaintiff's alternative argument. The trial court was afforded no fair opportunity to rule upon a theory of

liability based upon ostensible agency. Thus, plaintiff alleged no "holding out" by defendant or "reliance" by plaintiff; plaintiff registered no grounds of objection to the final order based upon that theory; and plaintiff did not invoke that theory in a motion to set aside the order. On appeal, plaintiff assigns no error addressed to that theory. We are of opinion that the issue posed by plaintiff's alternative argument is not properly before us, and we do not consider it. Rule 5:7.

Plaintiff argues that actual agency was a question of fact and that the trial court exceeded its authority in failing to submit that question to a jury.

Where, as here, a question of agency *vel non* rests upon written documents and the inferences deducible therefrom, the question is a question of law, for "[t]he construction of written documents is exclusively for the court." *Fulton* v. *W. R. Grace & Co.*, 143 Va. 12, 22, 129 S.E. 374, 377 (1925).

Moreover, Rule 3:18 empowers a trial court to enter summary judgment on the pleadings, pretrial conference orders, and admissions in the proceedings, provided that "it appears . . . that the moving party is entitled to judgment" and that no "material fact is genuinely in dispute." The facts determinative of the question of actual agency were those contained in the license agreement, none of which was in dispute. Accordingly, we hold that the trial court did not exceed its authority in granting summary judgment.

Actual agency is a consensual relationship.

> **"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."** RESTATEMENT (SECOND) OF AGENCY § 1 (1958).
>
> . . .
>
> "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." *Id.*, comment (b).

*See also Raney* v. *Barnes Lumber Corp.*, 195 Va. 956, 966, 81 S.E.2d 578, 584 (1954).

When an agreement, considered as a whole, establishes an agency relationship, the parties cannot effectively disclaim it by formal "consent". "[T]he relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually is." *Chandler* v. *Kelley*, 149 Va. 221, 231, 141 S.E. 389, 391-92 (1928).

*See also Thaxton* v. *Commonwealth*, 211 Va. 38, 43, 175 S.E.2d 264, 268 (1970). Here, plaintiff and defendant agree that, if the license agreement is sufficient to establish an agency relationship, the disclaimer clause[1] does not defeat it.

Plaintiff and defendant also agree that, in determining whether a contract establishes an agency relationship, the critical test is the nature and extent of the control agreed upon.

The subject matter of the license defendant granted Betsy-Len is a "system". As defined in the agreement, the system is one "providing to the public . . . an inn service . . . of distinctive nature, of high quality, and of other distinguishing characteristics". Those characteristics include trade names using the words "Holiday Inn" and certain variations and combinations of those words, trade marks, architectural designs, insignia, patterns, color schemes, styles, furnishings, equipment, advertising services, and methods of operation.

In consideration of the license to use the "system", the licensee agreed to pay an initial sum of $5000; to construct one or more inns in accordance with plans approved by the licensor; to make monthly payments of 15 cents per room per day (5 cents of which was to be earmarked for national advertising expenditures); and "to conduct the operation of inns . . . in accordance with the terms and provisions of this license and of the Rules of operation of said System".

Plaintiff points to several provisions and rules which he says satisfy the control test and establish the principal-agent relationship. These include requirements:

That licensee construct its motel according to plans, specifications, feasibility studies, and locations approved by licensor;

That licensee employ the trade name, signs, and other symbols of the "system" designated by licensor;

That licensee pay a continuing fee for use of the license and a fee for national advertising of the "system";

That licensee solicit applications for credit cards for the benefit of other licensees;

That licensee protect and promote the trade name and not engage in any competitive motel business or associate itself with any trade association designed to establish standards for motels;

---

[1] That clause provides that "Licensee, in the use of the name 'Holiday Inn' . . . shall identify Licensee as being the owner and operator [and] . . . the parties hereto are completely separate entities, are not partners, joint adventurers, or agents of the other in any sense, and neither has power to obligate or bind the other".

That licensee not raise funds by sale of corporate stock or dispose of a controlling interest in its motel without licensor's approval;

That training for licensee's manager, housekeeper, and restaurant manager be provided by licensor at licensee's expense;

That licensee not employ a person contemporaneously engaged in a competitive motel or hotel business; and

That licensee conduct its business under the "system", observe the rules of operation, make quarterly reports to licensor concerning operations, and submit to periodic inspections of facilities and procedures conducted by licensor's representatives.

The license agreement of which these requirements were made a part is a franchise contract. In the business world, franchising is a crescent phenomenon of billion-dollar proportions.

"[Franchising is] a system for the selective distribution of goods and/or services under a brand name through outlets owned by independent businessmen, called 'franchisees.' Although the franchisor supplies the franchisee with know-how and brand identification on a continuing basis, the franchisee enjoys the right to profit and runs the risk of loss. The franchisor controls the distribution of his goods and/or services through a contract which regulates the activities of the franchisee, in order to achieve standardization." R. Rosenberg, *Profits From Franchising* 41 (1969). (Italics omitted).

The fact that an agreement is a franchise contract does not insulate the contracting parties from an agency relationship. If a franchise contract so "regulates the activities of the franchisee" as to vest the franchisor with control within the definition of agency, the agency relationship arises even though the parties expressly deny it.

Often, the franchisor's principal asset is a trade mark. Under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, a trade mark owner may license a "related company" to use his mark, "provided such mark is not used in such a manner as to deceive the public." 15 U.S.C. § 1055. A "related company" is "any person who . . . is controlled by" the trade mark owner, and the owner may lose his mark by "abandonment" if it is not used, or if the manner in which it is used "causes the mark to lose its significance as an indication of origin." 15 U.S.C. § 1127. Under the mandate of the Act, a trade mark owner must, in order to preserve his asset and protect the public against deceptive uses of the mark, regulate the activities of his licensee. Whether power to regulate constitutes control sufficient to establish an agency rela-

tionship depends, in each case, upon the nature and extent of the power defined in the franchise contract.

Here, the license agreement contains the principal features of the typical franchise contract, including regulatory provisions. Defendant owned the "brand name", the trade mark, and the other assets associated with the "system". Betsy-Len owned the sales "outlet". Defendant agreed to allow Betsy-Len to use its assets. Betsy-Len agreed to pay a fee for that privilege. Betsy-Len retained the "right to profit" and bore the "risk of loss". With respect to the manner in which defendant's trade mark and other assets were to be used, both parties agreed to certain regulatory rules of operation.

Having carefully considered all of the regulatory provisions in the agreement, we are of opinion that they gave defendant no "control or right to control the methods or details of doing the work", *Wells* v. *Whitaker*, 207 Va. 616, 624, 151 S.E.2d 422, 429 (1966), and, therefore, agree with the trial court that no principal-agent or master-servant relationship was created.[2] As appears from the face of the document, the purpose of those provisions was to achieve system-wide standardization of business identity, uniformity of commercial service, and optimum public good will, all for the benefit of both contracting parties. The regulatory provisions did not give defendant control over the day-to-day operation of Betsy-Len's motel. While defendant was empowered to regulate the architectural style of the buildings and the type and style of furnishings and equipment, defendant was given no power to control daily maintenance of the premises. Defendant was given no power to control Betsy-Len's current business expenditures, fix customer rates, or demand a share of the profits. Defendant was given no power to hire or fire Betsy-Len's employees, determine employee wages or working conditions, set standards for employee skills or productivity, supervise employee work routine, or discipline employees for nonfeasance or misfeasance. All such powers and other management controls and responsibilities customarily exercised by an owner and operator of an on-going business were retained by Betsy-Len.

We hold that the regulatory provisions of the franchise contract did not constitute control within the definition of agency, and the judgment is

*Affirmed.*

---

[2] Because defendant had no such control or right to control, the distinction between a principal-agent and a master-servant relationship is not relevant here. *See* W. Seavey, *Law of Agency* § 3(B) (1964).