Cratsley, J.
The plaintiff, Dennis Ouellette, filed this wrongful termination suit in July, 1992 against the defendant “Sheraton Corporation.” Process was subsequently served on ITT Sheraton Corporation which then moved to dismiss the plaintiffs complaint on the ground that the plaintiff had sued the incorrect party. On March 25, 1993 the court denied the defendant’s motion to dismiss for the sole purpose of allowing the plaintiff to conduct discovery on the issue of the identity of the proper party defendant. The plaintiff, however, has declined to conduct any formal discovery as to this identity. This case is now before the court on the defendant’s motion for summary judgment pursuant to Mass.R.Civ.P. 56(c). In opposition to summary judgment, the plaintiff argues that Sheraton is liable to the plaintiff because of the agency relationship between Sheraton and its franchisee, the plaintiffs immediate employer. For the reasons set forth below, the defendant’s request for summary judgment is granted as a matter of law because there are no material facts in dispute.
FACTS
The material facts which follow were derived from the pleadings and affidavits of the parties.
ITT Sheraton Corporation is a Delaware corporation with its principle place of business in Boston, Massachusetts. Sheraton Inns, Inc., also a Delaware Corporation with its principle place of business in Boston, is the licensor of the Sheraton trademark and is a wholly owned subsidiary of ITT Sheraton Corporation. One of Sheraton Inns, Inc.’s licensees is the Sheraton Plymouth at Village Landing (“Plymouth Landing”) which is located at 180 Water Street in Plymouth, Massachusetts. At the time of the incident giving rise to this cause of action, Plymouth Landing was owned and operated by Puritan Waterfront Associates,[1] a subsidiary of the Plymouth Five Cents Savings Bank, and managed by Inncorp, Ltd.
The license agreement between Puritan Waterfront Associates and Sheraton Inns, Inc. was terminated on March 21,1991 when Puritan gave its mortgage lender a deed in lieu of foreclosure. The property currently operates under a new license agreement which became effective on July 14, 1992 under the ownership of “Plymouth Hotel Associates Limited Partnership” (whose general partner is G.P. Plymouth Hotel Corporation). Both entities list their address as 180 Water Street, Plymouth, Massachusetts and state their business purpose as the “ownership, operation and management of real estate.”
The plaintiff, Dennis Ouellette, was employed by Plymouth Landing in its repair and maintenance department. In May of 1989 he was injured while cleaning and repairing a hotel fountain. In August of that same year Plymouth Landing terminated Ouellette’s employment and he subsequently filed suit against Sheraton in July of 1992 alleging bad faith termination of an employment contract.
Both ITT Sheraton and Sheraton Inns, Inc. claim they never had an employment relationship with the plaintiff and, therefore, could not have terminated him in bad faith. They further argue that the license agreement allowed Plymouth Landing to use the Sheraton trademark and that was the extent of the relationship between Sheraton and Plymouth Landing. They claim that it was obvious that Sheraton and Plymouth Landing were two distinct and separate legal entities. Sheraton argues that the plaintiff has sued the wrong party and that plaintiff knew at all times, as evidenced by documents provided to the court by him, that Plymouth Landing was his employer.[2] Thus they ask for summary judgment.
The plaintiff contends that Sheraton’s control over its franchisee, Plymouth Landing, was so unusual or extraordinary that it created an agency relationship, thus holding Sheraton liable for the acts of its franchisee. The plaintiff asks this court to consider the licensing agreement as an agency agreement.
DISCUSSION
A motion for summary judgment shall be granted if the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively showing that there is no genuine issue as to any material fact on every relevant issue and that therefore judgment is a matter of law. Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the *66 motion must respond and allege specific facts establishing the existence of a material fact. Pederson v. Time Inc., 404 Mass. 14, 17 (1989); Madsen v. Erwin, 395 Mass. 715, 719 (1985). The courts, however, should not weigh the evidence, assess credibility or find facts. Kelley v. Rossi, 395 Mass. 659, 663 (1985). Furthermore, in determining whether a genuine issue of material facts exists, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Attorney General v. Bailey, 386 Mass. 367, 371 (1982).
As noted in Clem v. Stevco, Inc., the liability of a franchisor for alleged injuries suffered by employees of its franchisee is a relatively new and developing area of the law. 450 N.E.2d 550, 555 (Ind.App. 2 Dist. 1983). The general rule is that absent extraordinary circumstances which give rise to an agency relationship a licensor can not be held liable for the wrongful acts of the licensee (i.e. bad faith termination). See, e.g., Sherman v. Texas Co., 340 Mass. 606 (1960); Burgos-Oquendo v. Caribbean Gulf Refining Corp., 741 F.Supp. 330 (D. P.R. 1990); Oberlin v. Marlin Am. Corp., 596 F.2d 1322 (7th Cir. 1979); Murphy v. Holiday Inns, Inc., 219 S.E.2d 874 (Va. 1975); Arnson v. General Motors Corp., 377 F.Supp. 209 (N.D. Ohio 1974). The principle issue, therefore, is whether or not an agency relationship did in fact exist between Sheraton Inns, Inc. and Plymouth Landing.
When the question of agency rests upon documents and the reasonable inferences deducible therefrom, as here, the responsibility of construing the language is a questionoflawforthetrialjudge. See Cody v. Connecticut General Life Ins. Co., 387 Mass. 142 (1982) (insurance contract). Accordingly, courts developed the general rule that a determination of agency rests on whether or not the franchisor exercised pervasive and evident control over the operations of the franchisee, See, e.g., Fernander, 293 S.E.2d at 426; Murphy, 219 S.E.2d at 876; and Arnson, 377 F.Supp. at 213. For instance, courts have found an agency relationship to exist when the franchisor is involved in the daily operations of the franchisee and retains the right to control the detailed operation of the enterprise. Fernander v. Thigpen, 293 S.E.2d 424, 426 (S.C. 1982). Whether the power to regulate granted by the franchise contract constitutes control sufficient to establish an agency relationship depends on the nature and extent of the power defined in the contract. Murphy, 219 S.E.2d at 877. The burden of proving that an agency relationship exists between plaintiffs employer and Sheraton Inns, Inc. rests entirely on the party asserting its existence. Wood v. Holiday Inns Inc., 508 F.2d 167, 173 (5th Cir. 1975). Here, plaintiff fails to provide such proof.
Looking at this issue another way, mere involvement by a licensor in the operations of its licensee does not automatically create an agency relationship; some degree of involvement is necessary as the licensor must fulfill its obligations as set forth in the Lanham Act, 15 U.S.C. §1051. Under this act, the licensor must maintain a certain measure of control over, and regulate the activities of, the franchisee in order to ensure the integrity of the registered trademark. Oberlin, 596 F.2d at 1327. Courts recognize that Congress did not mean to create, by virtue of the Lanham Act, agency relationships between every licensor and licensee. Id.
In the case at bar, Sheraton Inns, Inc.’s control over Plymouth Landing was not pervasive and therefore, as a matter of law, no agency relationship was created by the franchise agreement. Under the terms of the licensing agreement, Sheraton Inns, Inc. had the right to inspect the premises three times a year. Additionally, Plymouth Landing had to comply with certain operating standards and procedures used in all Sheraton hotels, such as a uniform reservation system and specified levels of cleanliness and repair.[3]
The level of control in this case does not compare to the level of control exercised in other instances where courts have determined that no agency relationship existed between the parties. See, e.g., Oberlin, 596 F.2d at 1326 (franchisor retained right to approve all contract forms and established uniform terms, conditions and prices used in daily operations); Murphy, 219S.E.2dat876, 877 (licensee had to construct hotel according to specifications approved by licensor, employees of licensee had to be trained by licensor, and licensee was subject to quarterly reports and periodic inspections). Therefore, plaintiff has failed to meet his burden of offering legally sufficient facts to establish the existence of an agency relationship.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is ALLOWED.

 Puritan Waterfront Associate’s business address is South Park Avenue, Plymouth, Massachusetts. The actual licensing agreement is between Puritan Waterfront (a subsidiary of Plymouth Five Cents Savings Bank) and Sheraton Inns, Inc.

 Letters sent to Dennis Ouellette from Plymouth Landing concerning his insurance coverage have a letterhead which says “Sheraton Plymouth at Village Landing: The hospitality people of ITT. "These letters, however also contain a statement at the bottom that “The Sheraton Plymouth at Village Landing is owned by Puritan Waterfront Associates, a subsidiary of the Plymouth Five Cents Savings Bank and managed by Inncorp, Ltd. under a license by Sheraton Inns, Inc.

 The licensing agreement also contains an indemnity clause protecting the licensor against “any liability... to have been incurred by the licensee.” This is irrelevant, however, as the court must look at the evidence to determine the relationship between the parties and not at what the parties called it. Oberlin, 596 F.2d at 1326.